207 Mich. App. 491 (1994)
526 N.W.2d 36
MICHIGAN ASSOCIATION OF INTERMEDIATE SPECIAL EDUCATION ADMINISTRATORS
v.
DEPARTMENT OF SOCIAL SERVICES
Docket No. 143970.
Michigan Court of Appeals.
Submitted March 16, 1994, at Lansing.
Decided November 21, 1994, at 9:00 A.M.
White, Beekman, Przybylowicz, Schneider & Baird, P.C. (by Lynwood E. Beekman and Cynthia Williams Irwin), for the petitioners.
Frank J. Kelley, Attorney General, Thomas L. Casey, Solicitor General, and Morris J. Klau, Assistant Attorney General, for the Department of Social Services.
Before: TAYLOR, P.J., and WEAVER and M.R. SMOLENSKI,[*] JJ.
TAYLOR, P.J.
Petitioners appeal as of right a circuit court order affirming a declaratory ruling of the Michigan Department of Social Services (Michigan DSS). The ruling resulted from a disagreement between the parties regarding whether *493 county DSS offices are statutorily required to become involved in situations in which parents and school officials disagree regarding the educational programs for the parents' children. At the heart of this matter is the petitioners' view that the parents' failure to act in conformity with petitioners' opinions regarding the children's educational needs constitutes abuse or neglect. Two specific situations prompted this matter, both involving similar statutory provisions. We affirm.
The first situation involves the mother of a twenty-two-year-old autistic adult male. She challenged the opinion of officials of the Grand Rapids public school system regarding her son's educational needs. The mother desired to have her son's education program stress academic subjects in a classroom setting, whereas the school district wanted to stress vocational subjects emphasizing the goal of appropriate employment and community placement. Petitioner Lynwood Beekman was selected to serve as the hearing officer to handle the dispute. Following the hearing, Beekman issued his opinion that the educational program proposed by the school district officials was appropriate with certain modifications. Concerned that the mother's exercise of her right to appeal would impede the school district's plan, Beekman wrote a letter to the Kent County Department of Social Services requesting an educational evaluation and review of the son, pursuant to § 11b(5) of the adult protective services law of the Social Welfare Act, MCL 400.11b(5); MSA 16.411(2)(5), and expressing his belief that the son was abused or neglected as those terms are defined in the act. Beekman's letter also requested the Kent County DSS to consider filing a petition in the probate court for appointment of a temporary guardian to protect the son's educational interests.
*494 After review of Beekman's decision and letter, the Kent County DSS declined to investigate. Petitioners sought review of the Kent County DSS decision, and, in a declaratory ruling, the Michigan DSS held that the facts of the Kent County situation did not constitute abuse or neglect under the adult protective services law. The Michigan DSS also held that the Kent County DSS had accepted, reviewed, and screened out Beekman's request, interpreting MCL 400.11b; MSA 16.411(2) as allowing such action.
The second situation involves the parents of a minor child enrolled in the Plymouth-Canton School District. The parents refused the school district's request to conduct an educational evaluation of the child. Again, a hearing was held at which the hearing officer agreed with the school district. The parents refused to accede to the hearing officer's decision, as they are entitled to do under 1980 AACS, R 340.1723a(3). The hearing officer, petitioner Patrick O'Donnell, informed the Wayne County DSS of his belief that this situation involved educational neglect requiring investigation. The Wayne County DSS declined to become involved, finding that allegations of educational neglect did not come within the ambit of the Child Protection Law, MCL 722.621 et seq.; MSA 25.248(1) et seq. Again, the Michigan DSS agreed with this interpretation of the Child Protection Law in its declaratory ruling.
Declaratory rulings are reviewed "in the same manner as an agency final decision or order in a contested case," MCL 24.263; MSA 3.560(163), and consequently this review is governed by § 106(1) of the Administrative Procedures Act, MCL 24.306(1); MSA 3.560(206)(1). Because the facts are undisputed, the standard of review is whether the circuit court's affirmance of the Michigan DSS' declaratory *495 rulings is "[i]n violation of the constitution or a statute." MCL 24.306(1)(a); MSA 3.560(206)(1)(a).
To be reviewed, then, is whether the actions complained of by petitioners constitute abuse or neglect under the relevant provisions of the Child Protection Law and the adult protective services provisions of the Social Welfare Act. The germane statutory provisions of the Child Protection Law are in pertinent part as follows:
(c) "Child abuse" means harm or threatened harm to a child's health or welfare by a parent, legal guardian, or any other person responsible for the child's health or welfare, or by a teacher or teacher's aide, that occurs through nonaccidental physical or mental injury; sexual abuse; sexual exploitation; or maltreatment.
(d) "Child neglect" means harm or threatened harm to a child's health or welfare by a parent, legal guardian, or any other person responsible for the child's health or welfare that occurs through either of the following:
(i) Negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care.
(ii) Placing a child at an unreasonable risk to the child's health or welfare by failure of the parent, legal guardian, or any other person responsible for the child's health or welfare to intervene to eliminate that risk when that person is able to do so and has, or should have, knowledge of the risk. [MCL 722.622; MSA 25.248(2).]
The germane statutory provisions of the Social Welfare Act that pertain to adult protective services are in pertinent part as follows:
(a) "Abuse" means harm or threatened harm to an adult's health or welfare caused by another person. Abuse includes, but is not limited to, nonaccidental *496 physical or mental injury, sexual abuse, or maltreatment.
* * *
(d) "Neglect" means harm to an adult's health or welfare caused by the inability of the adult to respond to a harmful situation or by the conduct of a person who assumes responsibility for a significant aspect of the adult's health or welfare. Neglect includes the failure to provide adequate food, clothing, shelter, or medical care. A person shall not be considered to be abused, neglected, or in need of emergency or protective services for the sole reason that the person is receiving or relying upon treatment by spiritual means through prayer alone in accordance with the tenets and practices of a recognized church or religious denomination, and this act shall not require any medical care or treatment in contravention of the stated or implied objection of that person. [MCL 400.11; MSA 16.411.]
Petitioners argue that the terms "abuse" and "neglect," in both statutes, should be construed to encompass the educational abuse or neglect presented by these factual situations. Petitioners contend that the terms do encompass educational abuse and neglect and that the refusals of both the Kent County DSS and the Wayne County DSS to accept and investigate the reports of educational abuse and neglect were contrary to law.
The statutory provisions are parallel in most respects. They establish the method for reporting and investigating instances of abuse and neglect for individuals under disability for whom the state stands in the position of parens patriae, i.e., children and vulnerable adults. They also define the conduct that is abusive or neglectful. Consequently, the statutes, having a common purpose, are in pari materia and should be construed similarly *497 in order to give horizontal coherence to the law. People v Rogers, 438 Mich 602, 617; 475 NW2d 717 (1991); Co Rd Ass'n of Michigan v Bd of State Canvassers, 407 Mich 101; 282 NW2d 774 (1979). See Eskridge, The New Textualism, 37 UCLA L Rev 621, 655 (1990).
Our task, then, is to determine the meaning of the statutes. The first inquiry is whether the statutes are clear and unambiguous on their face. If they are, then judicial interpretation is neither required nor permitted and the court should not look beyond the ordinary meaning of that unambiguous language in giving effect to the statutes. American Community Mutual Ins Co v Comm'r of Ins, 195 Mich App 351, 365; 491 NW2d 597 (1992).
As the circuit court held, these statutes lend themselves to such a plain-meaning analysis. Child abuse is defined as harm to a child's welfare that occurs through nonaccidental physical or mental injury, sexual abuse, sexual exploitation, or maltreatment. Child neglect is harm to a child's welfare that occurs through negligent treatment or failure to eliminate an unreasonable risk to the child's welfare. Adult abuse is harm to a vulnerable adult's welfare that occurs through nonaccidental physical or mental injury, sexual abuse, or maltreatment. Adult neglect is harm to a vulnerable adult's welfare caused by the inability of the adult to respond to a harmful situation or by the caregiver failing to provide adequate food, clothing, shelter, or medical care. Utilizing the concept of expressio unius est exclusio alterius, we conclude that because certain things are specified in these acts, a legislative intention to exclude all others may be inferred. Accordingly, because certain harms are mentioned expressly in both statutes, this rule of statutory construction precludes reading educational abuse or neglect into these *498 phrases. In re Stowe, 162 Mich App 27, 31; 412 NW2d 655 (1987).
Petitioners, however, assert that these rules of construction do not define the phrase "mental injury" found in both statutes and that, because the statutes are remedial, "mental injury" should be construed expansively to include educational neglect or abuse. In support of this argument, petitioners point to the fact that the adult protective services law contains the additional language, "but is not limited to" before listing "nonaccidental physical or mental injury, sexual abuse, or maltreatment." Petitioners assert that this additional language indicates a legislative intent to give the statute an expansive reading. While it is true that remedial statutes are given an expansive reading, this tool of construction cannot be engaged in to the extent that it would amend the law. Big Rapids v Big Rapids Furniture Mfg Co, 210 Mich 158, 172; 177 NW 284 (1920). To include disagreements regarding educational programs within the statutory definitions of abuse and neglect would be a gross expansion of both statutes. We refuse to equate educational disputes with "nonaccidental physical or mental injury, sexual abuse, or maltreatment." To hold that mental injury encompasses educational disputes between parents and school officials would in effect amend the law. Authority for such an unprecedented assault on parental rights cannot be found in these statutes and, like the circuit court before us, we decline to so expand the statutes. Should such an expansion of the law be warranted, it is the Legislature's prerogative to do so  not that of the court. Morgan v Taylor, 434 Mich 180; 451 NW2d 852 (1990); Melia v Employment Security Comm, 346 Mich 544; 78 NW2d 273 (1956). Further, with regard to the additional phrase in the adult protective *499 services law, it is well-settled that "each provision of an act is to be read with reference to every other provision so as to produce an harmonious whole." In re Forfeiture of $5,264, 432 Mich 242, 251; 439 NW2d 246 (1989). To accept petitioners' reading of this language would defeat the requirement to read statutory provisions harmoniously.
Petitioners also argue that the adult protective services law states that the investigation may include an educational evaluation and review. From this they argue that if abuse and neglect did not include education, the language would have been excluded from the act. Petitioners' argument totally ignores the fact that this subsection only applies when there is some basis for suspecting that abuse or neglect exists. Here, that condition precedent is missing. Also, the listing of specific factors that such an investigation may review adds additional weight to the conclusion that educational issues are not encompassed by the phrase "mental injury."
Finally, regarding the Child Protection Law, petitioners cite authority from Iowa and North Carolina. These cases are inapposite because they are cases where children were held out of school by their parents. The child in this case was in school, and, as both parties acknowledge, these parents have the right to oppose the conducting of an educational evaluation. Accordingly, the foreign authorities are not parallel and render no helpful rationale.
Affirmed
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.