SPIKES v BANKS

Docket No. 197144. Submitted February 5, 1998, at Detroit. Decided
    August 21, 1998, at 9:20 A.M.

Katara Spikes, a minor, by her next friend, Gloria J. Simmons,
    brought an action in the Wayne Circuit Court against Annie K.
    Banks and Teen Ranch, Inc. The plaintiff alleged that negligence by
    Banks, who had been the plaintiff's licensed foster parent, and by
    Teen Ranch, a child care organization that had placed the plaintiff
    in Banks' foster home, had led to the plaintiff's impregnation at age
    fifteen by Tabra Evans, who was an adult nephew of Banks and a
    resident of Banks' home and, at the time of sexual contact with the
    plaintiff in Banks' home, faced charges of first-degree criminal sex-
    ual conduct, felonious assault, and kidnapping. The court, Susan
    Bieke Neilson, J., granted summary disposition for Banks and Teen
    Ranch, ruling that the action was barred by immunity granted by
    law. The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court correctly granted summary disposition for Teen
Ranch pursuant to *Martin v Children's Aid Society*, 215 Mich App
88 (1996), in which it was held that absolute immunity from suit
extends to social workers initiating and monitoring child placement
proceedings and placements.

2. The trial court erred in granting Banks summary disposition
based on immunity granted under MCL 722.163(1); MSA
25.358(63)(1). This statute allows a foster child to maintain an
action against the child's licensed foster parent for injuries suffered
as a result of ordinary negligence, except where the alleged negli-
gent act involves an exercise of reasonable parental authority over
the child or an exercise of reasonable parental discretion with
respect to the provision of food, clothing, housing, medical and
dental services, and other care. In this case, the exception for acts
involving an exercise of reasonable parental authority does not
apply because the plaintiff has alleged facts sufficient to establish
child neglect, defined by the Child Protection Law, MCL 722.622(d);
MSA 25.248(2)(d), to be harm or threatened harm to a child's
health or welfare by a parent, legal guardian, or other responsible
person that occurs through either negligent treatment or placing

the child at an unreasonable risk by failing to intervene to eliminate that risk when the responsible person is able to do so and has, or should have, knowledge of the risk. The exception for acts involving an exercise of reasonable parental discretion with respect to the provision of, among other things, housing does not apply in this case because the plaintiff's allegations indicate that Banks knew or should have known of her nephew's propensity for criminal sexual conduct and involvement with the plaintiff.

3. The plaintiff has stated a prima facie case of negligence by Banks so as to allow the plaintiff to avoid summary disposition in favor of Banks.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. SOCIAL SERVICES — SOCIAL WORKERS — IMMUNITY — CHILD PLACEMENT PROCEEDINGS.

Social workers are immune from liability with respect to activities involving the initiating and monitoring of child placement proceedings and placements.

2. NEGLIGENCE — FOSTER PARENTS — IMMUNITY.

A licensed foster parent is immune from an action by a foster child for injuries suffered as a result of ordinary negligence if the alleged negligent act involves an exercise of reasonable parental authority over the child or if the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care (MCL 722.163[1]; MSA 25.358[63][1]).

3. NEGLIGENCE — FOSTER PARENTS — IMMUNITY — CHILD PROTECTION LAW.

A negligent act by a licensed foster parent that causes injury to a foster child does not involve an exercise of reasonable parental authority over the child or an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care, and the foster parent does not enjoy statutory immunity from a negligence action arising from such injury, where the negligent act constitutes child neglect, i.e., harm or threatened harm by the foster parent to the child's health or welfare that occurs through negligent treatment or failure to eliminate an unreasonable risk to the child's health or welfare (MCL 722.163[1], 722.622[d]; MSA 25.358[63][1], 25.248[2][d]).

*Bill Colovos*, for the plaintiff.

*Garan, Lucow, Miller, Seward & Becker, P.C.* (by *Frederick B. Plumb* and *Nancy J. Bourget*), for Annie K. Banks.

*Noeski and Abbo* (by *Paul Abbo*), for Teen Ranch, Inc.

Before: SAAD, P.J., and WAHLS and GAGE, JJ.

GAGE, J. Plaintiff appeals as of right from two circuit court orders granting summary disposition in favor of defendants. We affirm in part, reverse in part, and remand.

Plaintiff was born on April 7, 1978. In early 1992, she became a temporary ward of the state and was placed in foster care. On June 28, 1993, defendant Teen Ranch, Inc., a child care organization, placed her in the foster home of defendant Annie K. Banks. In her deposition, plaintiff testified that twelve people lived in Banks' home when she moved in, including Banks' sister and two nephews.[1] There were two other foster children in the home, both teenage girls, who separately ran away from the home in August of 1993. Plaintiff alleged that twenty-three-year-old nephew Tabra Evans lived in the home without the knowledge or permission of Teen Ranch.[2] At the time of the occurrences that form the basis of plaintiff's complaint, charges of first-degree criminal sexual conduct, felonious assault, and kidnapping were

---

[1] Although plaintiff's complete deposition was not in the lower court record provided to this Court, the circuit judge indicated at the hearing on defendants' motions for summary disposition that she had "read every page" of plaintiff's deposition. We thus consider this evidence part of the record on which the circuit judge relied in rendering her decision.

[2] In her deposition, defendant Banks denied that Evans lived in her home, indicating that he visited and occasionally stayed overnight.

pending against Evans.[3] Plaintiff testified that Banks knew of these charges because the police came to the house looking for Evans on a number of occasions.

In July 1993, approximately two weeks after plaintiff moved into Banks' home, Evans and plaintiff, who was then fifteen, began engaging in sexual activity. Plaintiff testified that she had not previously had sexual intercourse. According to plaintiff, Evans had tried to convince her to have sexual relations with him throughout the two-week period, threatening that he would commit suicide if she did not consent. She further alleged that everyone in the home was aware that Evans was interested in her because he followed her everywhere she went. They had sexual intercourse five or six times, always in Banks' house. As a result, plaintiff became pregnant and gave birth to a daughter on April 21, 1994.

Plaintiff admitted in her deposition that she did not directly tell Banks that she had engaged in sexual relations with Evans until November 1993, when she told Banks that she was pregnant. According to plaintiff, Banks then evicted Evans from her home. However, plaintiff also testified that she did tell Banks that Evans was bothering her and "how bad he like got on my nerves and stuff and she wouldn't do anything about it." Plaintiff stated that she asked Banks to tell Evans to leave her alone "and she would tell him something like Tabra, leave that girl alone. But then it wouldn't work, he would still bother me." According to plaintiff, Banks knew about the sexual relationship before plaintiff told Banks that she was

---

[3] Evans apparently was arrested for these charges in December 1993. He was later convicted of all three charges and sentenced to a prison term.

pregnant, and she cited facts in support of this allegation. Plaintiff also alleged that when Banks learned that plaintiff was pregnant, she asked plaintiff not to tell Teen Ranch because she would lose her foster care license. Banks also told plaintiff that she would arrange for an abortion, but plaintiff decided to continue her pregnancy. A report on plaintiff's progress prepared on November 24, 1993, by Teen Ranch noted that a twenty-three-year-old nephew of Banks had shown interest in plaintiff. The report further noted that plaintiff "denies any interest in the young man, but the foster parent has found evidence that supports otherwise. This 23 year old nephew has been told that he cannot pursue a relationship with [plaintiff], and [plaintiff] understands that it is inappropriate."

Plaintiff filed a complaint, with her biological mother acting as her next friend, alleging that both defendants were negligent in their care of her. Defendant Teen Ranch moved for summary disposition pursuant to MCR 2.116(C)(7) and (10), arguing that it had absolute immunity from private lawsuits for negligence under this Court's ruling in *Martin v Children's Aid Society*, 215 Mich App 88; 544 NW2d 651 (1996). Defendant Banks moved for summary disposition pursuant to MCR 2.116(C)(7), contending that she was immune from suit because her actions involved an exercise of reasonable parental authority over plaintiff pursuant to MCL 722.163(1)(a), (b); MSA 25.358(63)(1)(a), (b). The circuit court entered separate orders granting summary disposition to both defendants.

This Court reviews a circuit court's grant or denial of summary disposition de novo to determine if the

moving party was entitled to judgment as a matter of law. *Brown v Genessee Co Bd of Comm'rs*, 222 Mich App 363, 364; 564 NW2d 125 (1997). In reviewing a motion brought under MCR 2.116(C)(7) to determine if a plaintiff's claim is barred by immunity granted by law, a court must consider all documentary evidence filed or submitted by the parties. *McKeen v Tisch (On Remand)*, 223 Mich App 721, 723; 567 NW2d 487 (1997). The court accepts all well-pleaded allegations as true and construes them in a light most favorable to the nonmoving party. *Id.*

On appeal, defendant Teen Ranch again contends that it has absolute immunity against any negligence in its placement and supervision of plaintiff in defendant Banks' home under this Court's ruling in *Martin, supra*. We agree. In *Martin*, the plaintiffs' child was made a temporary ward of the court. The Department of Social Services had contracted with the Children's Aid Society (CAS), a private organization, to care for neglected and abused children. The CAS placed the plaintiffs' daughter in a foster home. The plaintiffs filed a lawsuit against the CAS, claiming they had been wrongly separated from their child. The circuit court denied the CAS's motion for summary disposition on the basis of absolute immunity but granted the motion on other grounds. On cross appeal, this Court noted that federal courts had already "extended absolute immunity to social workers initiating and monitoring child placement proceedings and placements." *Id.* at 95. The Court agreed with the CAS that "absolute immunity is necessary to assure that our important child protection system can continue to function effectively." *Id.* at 97.

In the present case, the circuit court specifically cited the following language from *Martin*:

These [federal] precedents recognize the important role that social workers play in court proceedings to determine when to remove a child from the home and how long to maintain the child in foster care. They also recognize that, to do that difficult job effectively, social workers must be allowed to act without fear of intimidating or harassing lawsuits by dissatisfied or angry parents. [*Id.* at 96.]

The court found that *Martin* was binding precedent and controlled the outcome of Teen Ranch's motion for summary disposition. We agree with the circuit court and affirm its grant of summary disposition to Teen Ranch based on its absolute immunity from tort liability arising from its placement and supervision of plaintiff.

Defendant Banks similarly contends that she is entitled to absolute immunity as a foster parent. She relies on MCL 722.163(1); MSA 25.358(63)(1), the foster parent immunity statute, which provides in pertinent part:

A foster child may maintain an action against his or her foster parent who is licensed under Act No. 116 of the Public Acts of 1973, being sections 722.111 to 722.128 of the Michigan Compiled Laws, and a child may maintain an action against his or her legal guardian for injuries suffered as a result of the alleged ordinary negligence of the foster parent or legal guardian except in either of the following instances:

(a) If the alleged negligent act involves an exercise of reasonable parental authority over the child.

(b) If the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care.

Banks contends that the acts alleged by plaintiff involve the exercise of reasonable parental authority or, in the alternative, an exercise of reasonable parental discretion with respect to housing arrangements, and as such plaintiff cannot maintain her lawsuit.

Although the foster parent immunity statute has not previously been construed in a published appellate opinion, the courts of this state have dealt extensively with parental immunity. In general, parental immunity has been abolished by case law in this state, and parents are not immune from lawsuits brought by their minor children alleging negligence. Two exceptions to this general rule, however, have been recognized. In *Plumley v Klein*, 388 Mich 1, 8; 199 NW2d 169 (1972), the Michigan Supreme Court abrogated general intrafamily tort immunity, holding:

> A child may maintain a lawsuit against his parent for injuries suffered as a result of the alleged ordinary negligence of the parent. Like our sister states, however, we note two exceptions to this new rule of law: (1) where the alleged negligent act involves an exercise of reasonable parental authority over the child; and (2) where the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care.

This is the same language used by the Legislature to describe the immunity of foster parents. We therefore find judicial interpretation of the two exceptions to the abolishment of parental immunity instructive in our analysis of the immunity granted to a foster parent.

In determining whether a defendant was exercising reasonable parental authority, the question to be answered is not whether the defendant acted negli-

gently, but whether the alleged act reasonably fell within one of the *Plumley* exceptions. *Phillips v Deihm,* 213 Mich App 389, 395; 541 NW2d 566 (1995). The determination whether conduct falls within one of the *Plumley* exceptions is a question of law for the court. *Id.* Regarding the first exception to the rule that a child generally may sue the child's parents for negligence, this Court has held on numerous occasions that claims of negligent supervision cannot stand, and the parent will be granted immunity from such claims. See *Ashley v Bronson,* 189 Mich App 498, 502; 473 NW2d 757 (1991).

In *Phillips, supra,* the plaintiff brought an action against his grandfather, Duwayne, and his grandfather's wife, Opal, for sexual abuse inflicted upon him by Duwayne over an eight-year period. Opal was named as a defendant because she allegedly was aware of the abuse but took no action to prevent it. The plaintiff argued on appeal that the trial court abused its discretion in denying his motion for a directed verdict with regard to the issue of Opal's parental immunity. This Court agreed, noting that Opal would be immune from liability if she "was exercising reasonable parental authority over plaintiff." *Id.* at 395. The Court found, however, that if the plaintiff's allegations were true, Opal's failure to act could constitute criminal neglect. *Id.* at 396. Opal had a statutory duty to intervene to eliminate any unreasonable risk to the plaintiff of sexual abuse if she had actual knowledge of the risk or if she should have had such knowledge. MCL 722.622(d)(ii); MSA 25.248(2)(d)(ii). The Court considered Opal's alleged failure to act on the plaintiff's behalf to be child neglect, which is "not a reasonable exercise of parental discretion. As a

matter of law, Opal is not entitled to the defense of parental immunity." *Phillips, supra* at 396. The Court further held that "a person over eighteen years of age who is responsible for a child, as defined by [MCL 722.622(i); MSA 25.248(i)], has a duty to act reasonably to prevent the sexual abuse of that child." *Phillips, supra* at 398.

In the present case, Banks argues that plaintiff has alleged negligent supervision, and she is therefore entitled to immunity. In her complaint, plaintiff alleges that Banks allowed her adult nephew, who "had a propensity of engaging in criminal sexual conduct," to reside in her home without the permission of Teen Ranch while plaintiff was living in the home as a foster child. Plaintiff further alleges that the nephew committed repeated criminal sexual conduct with her, in violation of MCL 750.520b; MSA 28.788(2) and MCL 750.520c; MSA 28.788(3), and that Banks knew or should have known that her adult nephew and foster child were engaging in sexual relations in her home. We believe that plaintiff's allegations, which we accept as true for the purpose of this determination, actually sound in child neglect rather than negligent supervision.

The Child Protection Law, MCL 722.621 *et seq.*; MSA 25.248(1) *et seq.*, includes the following definition of child neglect:

"Child neglect" means harm or threatened harm to a child's health or welfare by a parent, legal guardian, or any other person responsible for the child's health or welfare that occurs through either of the following:

(i) Negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care.

(ii) Placing a child at an unreasonable risk to the child's health or welfare by failure of the parent, legal guardian, or any other person responsible for the child's health or welfare to intervene to eliminate that risk when that person is able to do so and has, or should have, knowledge of the risk. [MCL 722.622(d); MSA 25.248(2)(d).]

As summarized by this Court in *Michigan Ass'n of Intermediate Special Ed Administrators v Dep't of Social Services*, 207 Mich App 491, 497; 526 NW2d 36 (1994), "[c]hild neglect is harm to a child's welfare that occurs through negligent treatment or failure to eliminate an unreasonable risk to the child's welfare." A "person responsible for the child's health or welfare" includes an owner or operator of a licensed or unlicensed child care organization. MCL 722.622(h)(i); MSA 25.248(2)(h)(i). The Child Protection Law includes a foster home within the definition of a child care organization. MCL 722.111(a); MSA 25.358(11)(a).

As plaintiff's foster parent, Banks was an adult who had responsibility for plaintiff within the definition of MCL 722.622(i); MSA 25.248(i). She therefore had "a duty to act reasonably to prevent the sexual abuse" of plaintiff. See *Phillips, supra* at 398. Moreover, Banks had a statutory duty to eliminate the risk of her adult nephew engaging in sexual conduct with plaintiff if she knew or should have known of the risk. MCL 722.622(d)(ii); MSA 25.248(2)(d)(ii). Plaintiff has alleged that Banks knew or should have known that her nephew was repeatedly engaging in criminal sexual conduct in her own home with her foster child. In reviewing the grant of summary disposition to Banks, this Court must accept as true all of plaintiff's well-pleaded allegations and construe them in a light most

favorable to plaintiff as the nonmoving party. *McKeen, supra* at 723. Taken in a light most favorable to plaintiff, plaintiff has alleged facts sufficient to establish child neglect, which as a matter of law is not a reasonable exercise of parental discretion. *Phillips, supra* at 396. The circuit court therefore erred in granting summary disposition under the first exception to the abrogation of foster parent immunity.

Banks argues in the alternative that she is entitled to immunity under the second exception in MCL 722.163(1); MSA 25.358(63)(1), which provides immunity for an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care. Banks contends that "[a] foster parent may decide how the living quarters will be arranged and maintained and who will enter the home without being subject to liability."

In arguing that the second exception to the abrogation of parental immunity applies, Banks points to two opinions in which this Court found that the second *Plumley* exception applied. In *Thelen v Thelen,* 174 Mich App 380; 435 NW2d 495 (1989), the plaintiff sued her father and stepmother after she was bitten by a dog acquired earlier the same day during a weekend visit. The plaintiff's complaint alleged negligent supervision of the dog rather than a child. This Court found that the negligence alleged in the plaintiff's complaint was "clearly based on parental maintenance of a home environment, in that defendants allowed the home to be occupied by an 'unleashed and roaming' dog." However, the Court reversed the circuit court's grant of summary disposition based on immunity because parental immunity does not bar

suits brought under MCL 287.351; MSA 12.544, the strict liability dog-bite statute. In *Ashley v Bronson*, 189 Mich App 498; 473 NW2d 757 (1991), the conservator of the 2½-year-old child's estate brought a lawsuit against the child's father, alleging negligence and the creation of a nuisance in constructing and installing the gate and stairs leading to a backyard pool. Defendant argued he was immune from liability under the doctrine of intrafamily tort immunity. This Court first found that the case did not fall within the first *Plumley* exception. *Ashley, supra* at 502. Regarding the second exception, the Court noted:

> We hold that in this case defendant's alleged negligent act fell within the second exception and that he was entitled to immunity. Defendant's decision to keep the swimming pool on the property, as well as defendant's decision to build the gate and his subsequent acts in building the gate, was an exercise of reasonable parental discretion regarding the provision of housing for defendant's family. [*Id.* at 506-507.]

We distinguish the present case on its facts from the two cited by Banks. The cited cases involve the purchase and maintenance of a dog in the family home and the construction of a gate around a pool in the backyard. We do not find these cases analogous to allowing an adult male relative with pending criminal sexual conduct charges to stay in one's licensed foster care home, without informing the placement agency. Moreover, accepting plaintiff's allegations as true, defendant knew or should have known that her nephew was engaging in repeated criminal sexual conduct with her foster child. We do not find the facts as alleged by plaintiff to be "an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental

services, and other care." *Plumley, supra* at 8. Therefore, we find that the alleged conduct also does not fall within the second *Plumley* exception to the abrogation of parental immunity, and summary disposition granted on that ground would also have been inappropriate.

Although we hold that plaintiff's allegations do not fall within one of the statutory exceptions, we recognize that foster parents provide an important public service in caring for children in need of the state's protection. We wish to encourage rather than discourage citizens to take on this essential function. The Legislature has acknowledged this role in specifically granting foster parents the same measure of immunity from tort liability as that granted by case law to natural and adoptive parents. MCL 722.163(1); MSA 25.358(63)(1). That measure of immunity is not, however, total. The courts of this state have in fact generally abolished parental immunity, while carving out two specific exceptions to the general rule of abrogation. A parent or foster parent is immune only when the alleged negligent act involves an exercise of reasonable parental authority or when the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of such things as food, clothing, and housing. *Plumley, supra* at 8; MCL 722.163(1); MSA 25.358(63)(1). In no other circumstances is a parent or foster parent immune from liability for negligence alleged by minor children or foster children. Moreover, our Legislature and courts have also emphasized the necessity of caregivers providing protection from sexual abuse to minors for whom they are responsible. *Phillips, supra* at 398; MCL 722.622(d)(ii); MSA 25.248(2)(d)(ii). As a soci-

ety, we take these vulnerable children and place them in the homes of strangers. We have to know that they will be safe. Considering this important public policy, we cannot grant immunity to foster parents, parents, or other responsible adults in circumstances involving the sexual abuse of a minor when the caregiver knew or should have known of the abuse and did nothing to prevent it.

Because defendant Banks cannot avail herself of the defense of immunity under MCL 722.163(1); MSA 25.358(63)(1), we must determine whether plaintiff has alleged an ordinary negligence cause of action against Banks that will survive her motion for summary disposition. To establish a prima facie case of negligence, a plaintiff must introduce evidence sufficient to establish that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, (3) the defendant's breach was a proximate cause of the plaintiff's injuries, and (4) the plaintiff suffered damages. *Phillips, supra* at 397. Whether a defendant owes an actionable legal duty to a plaintiff is a question of law. *Id.* As plaintiff's foster parent, defendant Banks had a duty to act reasonably to prevent the sexual activity between her minor foster child and her adult nephew. MCL 722.622(d)(ii); MSA 25.248(2)(d)(ii). Whether Banks breached her duty to plaintiff is a question of fact for a jury and is not an appropriate consideration for summary disposition. MCR 2.116(C)(10); *Phillips, supra* at 398.

We affirm the circuit court's grant of summary disposition to defendant Teen Ranch. We reverse the grant of summary disposition to defendant Banks and remand for proceedings consistent with this opinion. We do not retain jurisdiction.