*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HOWARD T. LINDEN, Personal Representative of the ESTATE OF OMARION HUMPHREY,

        Plaintiff-Appellant,

v

ALTERNATIVES FOR CHILDREN & FAMILIES, INC.,

        Defendant-Appellee,

and

LASENETTE LULU RICHARDSON,

        Defendant.

UNPUBLISHED
February 10, 2026
2:19 PM

No. 370585
Genesee Circuit Court
LC No. 15-105945-NO

Before: O'BRIEN, P.J., and MURRAY and LETICA, JJ.

PER CURIAM.

        Plaintiff, Howard T. Linden, the personal representative of the Estate of Omarion Humphrey (OH), appeals as of right the trial court's underlying order granting summary disposition in favor of defendant, Alternatives for Children and Families, Inc.[1] We affirm.

---

[1] The parties stipulated to dismiss the only remaining defendant, Lasenette Lulu Richardson, on April 1, 2024. The claim of appeal does not challenge any rulings pertaining to Richardson. Accordingly, our use of the term "defendant" solely references Alternatives for Children and Families, Inc. The April 1, 2024 stipulated order of dismissal expressly reserved the right to appeal the trial court's July 18, 2016 order granting defendant's motion for summary disposition, the December 28, 2016 order denying plaintiff's motion for reconsideration, and the February 24, 2022 and February 12, 2024 orders denying plaintiff's motion to revise the order granting

## I. FACTUAL AND PROCEDURAL HISTORY

In December 2015, plaintiff filed a complaint alleging negligence against defendant. Specifically, it was asserted that plaintiff's decedent, nine-year-old OH, was a special needs child with non-verbal autism. Defendant, a foster child placement agency, purportedly placed OH in Richardson's foster home on February 23, 2015. Plaintiff claimed that this placement occurred despite knowledge of Richardson's history of failing to supervise children in her care. Additionally, it was asserted that Richardson did not receive any training in how to supervise a child with autism. Richardson purportedly took OH to a party on July 4, 2015, where she allegedly left him to roam without supervision, despite their presence near a lake. Six days later, OH's body was recovered from the lake. Plaintiff alleged that defendant was negligent in failing to train, educate, and license foster homes and parents.

In April 2016, defendant moved for summary disposition under MCR 2.116(C)(7), claiming entitlement to absolute immunity as a foster care placement agency. Specifically, defendant stated that it was a foster care placement and service provider that contracted with the Department of Health and Human Services (DHHS).[2] After OH was placed with Richardson, OH's parents received weekly supervised visits. Additionally, defendant submitted a May 4, 2015 report to the family court addressing OH's placement, supervision, and parental visits. It was indicated that OH was "happy and [] bonding appropriately in his foster home." It was recommended that he remain in the foster home while relative placement continued to be explored. At the time of OH's death four months later, he was still subject to family court supervision.

Defendant contended that it was entitled to summary disposition because private agencies that contracted with the state to provide foster care placement and services were entitled to absolute immunity from civil suits. It was argued that immunity was not limited to circumstances where judicial oversight occurred. Nonetheless, if that circumstance was imposed, judicial oversight was fulfilled by the court hearings and report submitted to address OH's care. Any alleged issue with OH's foster care placement or supervision could have been raised by the parents or otherwise addressed in court during the parental custody case. Therefore, defendant claimed that it was entitled to summary disposition.

In May 2016, plaintiff opposed the dispositive motion, asserting that summary disposition was premature in light of the limited discovery that had occurred. OH's parents and guardian ad litem had insufficient information to challenge his foster care placement. Additionally, plaintiff

---

defendant's motion for summary disposition. Despite this reservation, plaintiff's statement of questions presented challenges the trial court's order granting summary disposition, the failure to permit amendment, and the need to conduct discovery. The appellate challenges arise from the July 18, 2016 order and the December 28, 2016 order.

[2] The petition indicated that OH was one of eight children, that the family had prior agency contact, that the home was extremely unsuitable because of hazards and trash, that there was insufficient food, bedding, and clean clothing to support the children, that the parents resided in a separate apartment that they would not allow DHHS to view, that the older children cared for the younger children, and that OH's mother was expecting twins.

alleged that any immunity was limited to quasi-judicial immunity, not the "blanket" all-encompassing immunity requested by defendant. It was claimed that immunity only pertained to social workers acting as an advocate or an agent of the family court. Here, plaintiff's allegations did not correlate to "actions by social workers who were advocating for [OH] or making recommendations to the family court on his behalf." Instead, the complaint challenged defendant's negligent oversight of the foster parent. The immunity did not apply because plaintiff alleged that defendant placed OH in a home with a history of licensing violations and inadequate training to care for a severely autistic child. Moreover, the immunity available to defendant was not absolute, but quasi-judicial immunity with its application contingent on the action performed. Therefore, summary disposition must be denied.

In reply, defendant alleged that plaintiff's request for additional discovery should not be granted because he failed to make a proper showing under MCR 2.116(H), by providing an affidavit that specifically identified exactly what facts discovery would uncover to impact the outcome of the dispositive motion. Defendant further claimed that plaintiff could not demonstrate that additional discovery would be "fruitful" because defendant was a private placement agency entitled to absolute immunity. And plaintiff's reliance on quasi-judicial immunity was erroneous because the doctrine was simply inapplicable. Lastly, plaintiff's contention that it did not have a remedy was also error because Richardson remained a defendant in the litigation.

On June 6, 2016, the trial court heard oral argument on the dispositive motion. The parties argued their respective positions regarding the scope of the immunity and whether it encompassed all of plaintiff's allegations. The trial court granted defendant's dispositive motion:

> These precedents recognize the important role that social workers play in court proceedings to determine when to remove a child from the home and how long to maintain the child in foster care – I would add in between those two, where to place the child. They also recognize that to do that difficult job effectively, social workers must be allowed to act without fear of intimidating or harassing lawsuits by dissatisfied or angry parents - or I would have to say aggrieved parents as well.
>
> I can't read the cases as strongly as plaintiff suggests. Although I do see the argument. And maybe - - if an appellate court says that I should have read it that way, I'll be happy to do so. But on what I have in front of me right now, I have to grant the motion and deny the request for discovery. Because it seems to me this is more about the status of the defendant than it is about the actions of the defendant. And it does also seem to me that further discovery might address actions, inactions, [and] omissions.

The trial court allowed plaintiff's counsel to state on the record that the licensing of the foster home did not occur per court order. Plaintiff's counsel also added that he had been unable to serve Richardson. Therefore, plaintiff sought to amend the complaint "just to simply add her again[.]" Plaintiff also requested that the amended complaint order enter before the summary disposition order. Otherwise, the summary disposition order would constitute a final order from which a claim of appeal would need to be filed. The trial court agreed to delay signing the summary disposition

order. On July 15, 2016, the trial court signed the order granting defendant's motion for summary disposition, and it was received for filing on July 18, 2016.[3]

On August 8, 2016, plaintiff moved for reconsideration of the trial court's summary disposition decision. And plaintiff sought leave to file an amended complaint. Plaintiff claimed that the trial court misunderstood absolute immunity because "close oversight" was still required, and defendant failed to prove it occurred. Further, plaintiff's allegations did not relate to a social worker's placement recommendation but Richardson's licensing. Specifically, Richardson did not have a current license at the time of OH's placement and failed to receive training to address his special needs. Alternatively, plaintiff requested leave to file an amended complaint to add breach of contract claims with OH as the third-party beneficiary of agreements between defendant and DHHS.

At the court's request through written order, defendant filed an answer to the reconsideration motion on November 17, 2016. Defendant responded that plaintiff's reliance on unpublished federal authority was meritless because it was not binding, summary disposition had not been granted prematurely, and amendment was futile because the proposed new claims were still subject to absolute immunity.

On December 28, 2016, the trial court denied plaintiff's motion for reconsideration and to amend the complaint. The trial court rejected plaintiff's attempt to rely on unpublished federal authority. The trial court determined that summary disposition was not premature because of incomplete discovery and that amendment of the complaint was futile. Plaintiff now appeals.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *White v Henry Ford Macomb Hosp Corp*, 346 Mich App 405, 419; 12 NW3d 635 (2023). A claim is properly dismissed if it is barred by "immunity granted by law." MCR 2.116(C)(7). When reviewing a motion premised on MCR 2.116(C)(7), the contents of the well-pleaded factual allegations in the complaint are accepted as true unless contradicted by documentary evidence. *Pike v Northern Mich Univ*, 327 Mich App 683, 690; 935 NW2d 86 (2019). In addition to the pleadings, any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties is considered in a light most favorable to the nonmoving party. *Tinsley v Yatooma*, 333 Mich App 257, 261 n 2; 964 NW2d 45 (2020). "If no material facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by . . . immunity is an issue of law." *Mays v Snyder*, 323 Mich App 1, 25; 916 NW2d 227 (2018) (quotation marks and citation omitted), aff'd sub nom *Mays v Governor*, 506 Mich 157; 954 NW2d 139 (2020).

---

[3] Plaintiff filed an action against the state of Michigan in federal district court for the Eastern District of Michigan, *Linden v Dixon*, Case No. 2:17-cv-14155. Apparently, while the federal case was pending, plaintiff did not dismiss the negligence claim against Richardson in this underlying case but waited until April 2024 to do so.

-4-

## III. IMMUNITY

Michigan's Child Protection Law, MCL 722.625, provides for immunity from civil liability:[4]

> A person acting in good faith who makes a report, cooperates in an investigation, or assists in any other requirement of this act is immune from civil or criminal liability that might otherwise be incurred by that action. A person making a report or assisting in any other requirement of this act is presumed to have acted in good faith. This immunity from civil or criminal liability extends only to acts done according to this act and does not extend to a negligent act that causes personal injury or to the malpractice of a physician that results in personal injury or death.

Social workers, caseworkers, and family court referees are entitled to absolute immunity when they investigate and make recommendations related to child safety, initiate proceedings related to child welfare, make removal decisions, and while functioning in roles intimately associated with the judicial phase of the proceedings. *O'Donnell v Brown*, 335 F Supp 2d 787, 826-827 (WD Mich, 2004).

Although parents have a fundamental liberty interest in the care, custody, and management of their children, *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982), this right must be balanced against the state's interest in protecting the health and welfare of children, *Martin v Children's Aid Society*, 215 Mich App 88, 90; 544 NW2d 651 (1996).

In *Martin*, the plaintiffs, parents of a thirteen-week-old daughter, took the infant to an emergency pediatric clinic where tests revealed diagnoses of pneumonia, numerous broken bones, and bruising. The doctor suspected abuse, and DHHS[5] filed an emergency petition with the probate court to temporarily detain the infant and make her a temporary court ward. The plaintiffs denied any abuse, requested a jury trial, and presented evidence that the injuries possibly occurred from a medical disorder such as a copper deficiency. The jury found that DHHS had proven abuse by a preponderance of the evidence, and the infant was made a temporary court ward. *Id*. at 90-91.

DHHS contracted with Children's Aid Society (CAS), a private organization, to provide services to neglected and abused children. Once the removal from the plaintiffs' care occurred, DHHS transferred the infant to CAS which placed her in a foster home. After the jury trial, additional hearings were conducted before the probate court. A dispositional hearing was held to

---

[4] See also MCL 722.633(1) addressing civil liability for the failure to report an instance of suspected child abuse or neglect when required to do so. ("A person who is required by this act to report an instance of suspected child abuse or neglect and who fails to do so is civilly liable for the damages proximately caused by the failure."). MCL 722.625 does not conflict with MCL 722.633(1) because the immunity of MCL 722.625 is contingent upon "acts done according to this act[.]"

[5] At that time, the entity was known as the Department of Social Services.

determine whether the infant could be returned to the plaintiffs, but after hearing the evidence, the probate court continued the placement in foster care. Six months later, a review hearing occurred, and the infant's placement remained in foster care. Three additional hearings occurred in the next 18 months, and no change in the infant's foster care placement transpired. The plaintiffs filed a claim of appeal, challenging the probate court's jurisdiction and the infant's foster care arrangement. Ultimately, this Court affirmed the probate court's jurisdiction, reversed the order continuing the infant's placement, and remanded for further proceedings. Thereafter, the infant was returned to the plaintiffs' care. *Id*. at 91-93.

The plaintiffs filed suit against DHHS' employees and the CAS, including four of its employees, citing their wrongful separation from the infant. Their claims included negligence, breach of statutory and contractual duties, bad faith, and violation of their constitutional rights. The trial court granted summary disposition to the defendants and denied the plaintiffs' motion for leave to amend their complaint. *Id*. at 90, 93. The trial court held that the DHHS defendants were entitled to summary disposition on the basis of qualified immunity. Addressing the CAS defendants, the trial court denied their dispositive motion premised on qualified immunity. Nonetheless, the trial court granted summary disposition in their favor for failure to state a claim, MCR 2.116(C)(8), and no genuine issue of material fact, MCR 2.116(C)(10). *Id*. at 93.

This Court affirmed the grant of summary disposition to the DHHS defendants. In so holding, it was acknowledged that DHHS involvement with the case was limited to reviewing the reports filed by the CAS personnel that were contracted to handle the infant's placement. This evidence failed to establish that the DHHS defendants knew that the plaintiffs' constitutional or statutory right to reunification was being denied. Additionally, the right of reunification had to be balanced against the state's interest in protecting the infant's health and welfare and to be free from abuse. When the probate court adopted the CAS recommendation to continue the infant's placement, it implicitly determined that the approach taken balanced the competing interests. The DHHS's defendants' conduct in similarly accepting the CAS recommendations did not violate the plaintiffs' statutory or constitutional interest in being reunified with the infant. *Id*. at 94-95.

This Court also concluded that the trial court improperly denied summary disposition in favor of the CAS defendants on the basis of immunity. In so doing, this Court determined that social workers were entitled to absolute immunity in order to "assure that our important child protection system can continue to function effectively." *Id*. at 97. We held:

> Federal appellate courts have extended absolute immunity to social workers initiating and monitoring child placement proceedings and placements in cases similar to the instant case. These precedents recognize the important role that social workers play in court proceedings to determine when to remove a child from the home and how long to maintain the child in foster care. They also recognize that, to do that difficult job effectively, social workers must be allowed to act without fear of intimidating or harassing lawsuits by dissatisfied or angry parents.
>
> > Caseworkers need to exercise independent judgment in fulfilling their post-adjudication duties. The fear of financially devastating litigation would compromise caseworkers' judgment during this phase of the proceedings and would deprive the court of

information it needs to make an informed decision . . . . There is little sense in granting immunity up through adjudication . . . and then exposing caseworkers to liability for services performed in monitoring child placement and custody decisions pursuant to court orders.

[ . . . []To permit the [social] worker to become a lightning rod for harassing litigation . . . would seriously imperil the effectiveness of state child protection schemes.[].]

When a court is involved, granting immunity from civil suit does not mean that the parents of a child taken from their home are without recourse to contest wrongful conduct by a social worker. "The parent of the apprehended child is not left remediless--he or she may always attack the court's order directly or on appeal." []Safeguards against . . . misconduct were built into the . . . adjudication process itself[].

Although we have found no Michigan precedent regarding this question, we find convincing the decisions granting absolute immunity to social workers. As the CAS defendants persuasively point out in their brief, absolute immunity is necessary to assure that our important child protection system can continue to function effectively:

> No more heinous act can be alleged than the physical abuse of a helpless infant by an adult. The volatile mix of accused parents, deprived of the custody of the baby, observing it in the care of foster parents, finding themselves in the unfamiliar confines of the court system, required to retain counsel at great cost, subject to the social services bureaucracy and its necessary interrogation and probing of the most intimate aspects of the family psyche, is almost guaranteed, rightly or wrongly, to produce resentment and a desire for retribution by the parent. Many parents in this situation are seriously psychologically disturbed.
>
> Professional assistance to the Probate Court is critical to its ability to make informed, life deciding judgments relating to its continuing jurisdiction over abused children. Its advisors and agents cannot be subject to potential suits by persons, aggrieved by the Court's decision vindictively seeking revenge against the Court's assistant as surrogates for the jurist. Faced with such liability, the social worker would naturally tend to act cautiously and refrain from making difficult decisions, delay in intervening to protect the child, avoid confronting the aggressive parent with the necessity of changing his attitudes and seeking psychiatric help to do so. Such an atmosphere defeats the function of the continuing jurisdiction of the Probate Court in the abstract, and in reality poses the potential for death for an abused child who is not protected because the social

-7-

worker exercised excessive caution in arriving at a judgment as to whether there is sufficient evidence of abuse to merit action on his or her part.

Mere qualified immunity is not enough protection to prevent the chilling effect of a potential suit on the exercise of a social worker's professional judgment and discretion in operating as an arm of the Probate Court to protect abused children. This litigation is vivid proof of that. [The trial judge] has ruled that Cross-Appellants have qualified immunity, but that has not prevented years of litigation. The threat of a suit like this one could make any social worker back off from making discretionary decisions that he or she would otherwise believe to be in the child's best interest.

Further, [the] plaintiffs have not been without a remedy regarding the allegedly wrongful conduct of the CAS defendants. The probate court regularly reviewed the placement recommendations of the CAS defendants at statutorily required hearings. This provided judicial oversight sufficient to protect plaintiffs from allegedly wrongful conduct against their interests by the CAS defendants. [The p]laintiffs had the statutory right to request accelerated hearings to contest their case service plan. MCL 712A.19(3)[]. The probate court had broad power to address concerns with the case service plan if, after a hearing, they were found to be legitimate. MCR 5.973(B). To allow [the] plaintiffs additional protection in the form of a cause of action against the CAS defendants for money damages would be too costly; it would "disserve the broader public interest in having participants [in contested child protection cases] . . . perform their respective functions without fear of having to defend their actions in a civil lawsuit."

Although the trial court incorrectly denied summary disposition for the CAS defendants on the basis of immunity, the trial court did reach the right result by granting them summary disposition on other grounds. The trial court's order granting summary disposition for the DSS defendants and for the CAS defendants are affirmed. [*Martin*, 215 Mich App at 97-99 (quotation marks and citations omitted).]

In *Spikes v Banks*, 231 Mich App 341, 343; 586 NW2d 106 (1998), the plaintiff,[6] born in 1978, was placed as a temporary ward of the state in foster care. The defendant, Teen Ranch, Inc. (Teen Ranch), a childcare organization, was the entity that placed the plaintiff in the foster home of defendant Annie K. Banks (Banks). The plaintiff testified that twelve people lived in the home, including Banks' sister, her two nephews, and other foster children. The plaintiff alleged that the 23-year-old nephew lived in the home without the knowledge and consent of Teen Ranch. The plaintiff claimed that criminal charges including sexual assault and kidnapping were pending against the nephew, and that Banks was aware of the charges because the police came to the home

---

[6] The plaintiff brought the action through her biological mother acting as her next friend. *Spikes*, 231 Mich App at 345.

searching for the nephew. Ultimately, the plaintiff was impregnated by the nephew. After the plaintiff disclosed the pregnancy, Banks purportedly begged the plaintiff to end the pregnancy and not disclose it because it would result in the loss of her foster care license. Nonetheless, the plaintiff gave birth to a daughter on April 21, 1994. *Id*. at 343-344.

Teen Ranch prepared a report addressing the plaintiff's progress on November 24, 1993. Apparently, Teen Ranch learned of the nephew's interest in the plaintiff. However, the plaintiff denied having any interest in him. The report reflected that the nephew was told that he could not have a relationship with the plaintiff, and the plaintiff also knew that it was inappropriate. *Id*. at 345.

The plaintiff filed suit against Teen Ranch alleging negligence. Teen Ranch moved for summary disposition under MCR 2.116(C)(7) and (10), asserting that it had absolute immunity from private lawsuits for negligence, citing the *Martin* decision. The trial court agreed, citing the language in *Martin* that recognized the important role social workers played in court proceedings and their need to act without fear of intimidation lawsuits. This Court agreed with the trial court and affirmed the grant of "summary disposition to Teen Ranch based on its absolute immunity from tort liability arising from its placement and supervision of [the] plaintiff." *Id*. at 347. However, this Court declined to grant absolute immunity to Banks as the foster parent. *Id*. at 348-355.

Further, in *Beauford v Lewis*, 269 Mich App 295, 296-297; 711 NW2d 783 (2005), the plaintiff and her three-year-old daughter went to a hospital emergency room where the plaintiff reported they endured three days of physical abuse from her husband. The plaintiff also reported that the child may have been sexually abused during that time. The treating physician recommended an examination by a sexual abuse expert, and the child was released into the custody of Child Protective Services (CPS). *Id*.

The family court ordered that the child be placed into foster care. CPS and the child's foster parent consented to the sexual assault examination expert, and CPS assigned a social worker[7] to investigate the claims of physical and sexual abuse. The social worker investigated and subsequently recommended that the plaintiff's parental rights be terminated. Nonetheless, after 15 months of custody proceedings, the plaintiff regained custody of her child. The plaintiff filed suit in circuit court against the social worker,[8] alleging that social workers were not entitled to

---

[7] The *Beauford* Court stated that CPS assigned April Shakoor to oversee the case and investigate her claim but did not specifically delineate Shakoor's title. We identify her as a social worker. However, the title is irrelevant because the Court found that Shakoor "acted as an agent to aid the court in its decision regarding the termination of [the] plaintiff's parental rights[.]" *Beauford*, 269 Mich App at 301.

[8] The plaintiff also filed suit against the sexual assault examiner. However, this claim was rejected for failing to appropriately address the issue with citation to authority. *Beauford*, 269 Mich App at 297-298.

absolute immunity. The circuit court granted the caseworker's dispositive motion by applying the *Martin* decision. *Id*. at 298.

The plaintiff asserted that the circuit court improperly relied on *Martin* because it was limited to factual circumstances where there was close oversight of the social worker's placement recommendations. Moreover, she argued that evidence was lacking that the social worker's investigation was by court order or closely monitored by the court, and therefore, the social worker was not entitled to immunity. *Id*.

This Court rejected the contention that "close oversight" required the court to "closely monitor[], of its own accord, [the social worker's] conduct during the investigation, and to oversee every discrete act of the social worker." *Id*. at 299. The *Beauford* Court noted that professional assistance to the family court was paramount to making informed, life altering decisions, and the court's advisors and agents could not effectively perform their function if they feared intimidating and harassing lawsuits. Further, parents and other interested parties had a sufficient remedy to challenge the social workers' actions in the family court proceeding. *Id*. at 299-300.

Specifically, the *Beauford* Court clarified the *Martin* decision:

Social workers are granted absolute immunity from civil litigation arising out of their work as "advisors and agents" of the probate court (now the family division of circuit court) because that court provides parents and other interested parties with a sufficient remedy for any wrongful action by a social worker. This Court stated, as a policy behind this rule, that without the threat of civil litigation, social workers have more freedom to honestly assess a particular situation, while the court still provides parents with a forum in which to contest these assessments and recommendations.

In *Martin*, the probate court placed a young girl in foster care and kept her there for several years on the basis of recommendations by the defendant social agencies that she be removed from her parents' care. After years of court proceedings, the girl's parents regained custody and then filed a lawsuit for damages arising out of their wrongful separation from their daughter, which they blamed on the defendants' allegedly incorrect recommendations to the probate court. Although this Court in *Martin* noted that the probate court had engaged in "close oversight" of the defendants' placement recommendations in that case, "close oversight" did not involve active, close monitoring of the defendants' investigation by the probate court, which plaintiff in the present case contends is required. There is no indication in *Martin* that the probate court addressed the "course and conduct" of the investigation at any of its hearings, or oversaw the discrete acts the defendants performed in the course of their investigation. Instead, when this Court stated in *Martin* that "close oversight" of the social workers' placement recommendations by the probate court had occurred, it was referring to a situation in which the probate court had reviewed the defendant social workers' findings and recommendations, and took action as a result, at proceedings in which the girl's parents were able to contest the recommendations.

-10-

The facts in the present case are similar in that they also indicate that the court, in the course of overseeing plaintiff's parental rights termination proceedings, reviewed [the social worker's] findings and recommendations. [The social worker] was assigned by [CPS] to investigate the allegations that plaintiff's daughter had been abused. [The social worker's] [CPS] safety assessment report of March 13, 2001, became the basis for her petition for permanent termination of parental rights filed before the family division, and led to 15 months of court proceedings regarding the termination of plaintiff's parental rights. "Close oversight" occurred in this case; as in *Martin*, [the social worker] acted as an agent to aid the court in its decision regarding the termination of plaintiff's parental rights, and her investigation and recommendations were subject to review by the family division as part of its proceedings. The court's failure to address the "course and conduct" of [the social worker's] investigation is irrelevant. Consequently, we conclude that [the social worker] is entitled to social worker absolute immunity. With that determination, we need not address plaintiff's other arguments relating to the claims against [the social worker].

Thus, in *Beauford*, *Spikes*, and *Martin*, this Court determined that "advisors and agents" of the family court were entitled to absolute immunity from civil litigation arising out of their work. This holding was warranted because the family court proceeding allowed for a sufficient remedy for any wrongful action by the social worker. And this holding was supported by policy; it was designed to grant social workers the freedom to honestly address a situation without the threat of civil litigation.

Plaintiff contends that the trial court erred because it concluded that social workers were entitled to absolute immunity in light of their "status" without regard to whether their actions or omissions were governed by absolute immunity. We disagree.

Although the trial court may have referred to the "status" of a social worker, when granting defendant's motion for summary disposition, it also acknowledged the policy underlying the application of immunity. Further, in denying plaintiff's motion for reconsideration, the trial court expressed its disagreement with plaintiff's "view" of the *Beauford*, *Spikes*, and *Martin* decisions, determined that the "breadth of the immunity"[9] was correctly articulated by defendant, and concluded that plaintiff's "close oversight" argument did not require factual development in light of the *Beauford* decision. Thus, the trial court expanded or altered its view that "status" was the primary consideration and correctly denied plaintiff's motion for reconsideration in light of the facts and circumstances of the decisions addressing absolute immunity.[10]

---

[9] In issue IV, plaintiff alleges that the trial court erred by applying absolute immunity when quasi or qualified immunity arising from a "functional approach" should be employed to address the nature and extent of the social worker's activities. We adhere to the decisions rendered in *Beauford*, *Spikes*, and *Martin*. See MCR 7.215(C)(2).

[10] Even if the trial court had not expanded on its rationale for granting summary disposition when denying plaintiff's motion for reconsideration, this issue does not entitle plaintiff to relief. "[T]his

-11-

Plaintiff next contends that the trial court erred in "extending" social worker absolute immunity to defendant because there was no evidence of "close oversight" by the family court of defendant's training of foster parents and its placement of a special needs child. We disagree.

In *Beauford*, 269 Mich App at 300-301, this Court rejected the contention that "close oversight" required the family court to actively and closely monitor the defendants' investigation. And there was no mandate that the family court oversee discrete acts performed by the defendants in the course of their investigation. Instead, the *Beauford* Court identified "close oversight" as reviewing "the defendant social workers' findings and recommendations, and [taking] action as a result, at proceedings in which the girl's parents were able to contest the recommendations." *Id*. at 301. The family court need not address the "course and conduct" of the social worker's investigation. *Id*.

Indeed, even plaintiff recognized that a petition was filed to remove OH and his siblings from their parents' care. With regard to OH, the parents did not obtain services for his autism. OH was sent to school with poorly-fitting, dirty clothes. He did not have appropriate footwear for the inclement weather conditions. School staff tried to aid OH because he was being bullied by his peers for his poor hygiene and body odor. On February 23, 2015, the family court ordered CPS to take the children into protective custody, and the children were placed with DHHS for care and supervision. DHHS contracted with defendant to provide services including placement and supervision. And defendant prepared a report dated May 1, 2015, delineating OH's placement and indicating that he was happy. Plaintiff presented no documentation or affidavits from the participants or attorneys in the family court proceeding to reflect that the court did not review the materials submitted. The trial court did not err in granting summary disposition in favor of defendant and in denying plaintiff's motion for reconsideration.

## IV. AMENDMENT OF THE COMPLAINT AND OPEN DISCOVERY

Plaintiff contends that the trial court erred in failing to allow discovery and in denying amendment of the complaint. We disagree.

As an initial matter, we note that plaintiff did not file a proposed amended complaint with the motion for reconsideration[11] specifically identifying the causes of action to be included and the factual allegations in support. The trial court did not abuse its discretion in denying the request to amend because plaintiff did not offer written amendment in accordance with MCR 2.118(A)(4). *Lown v JJ Eaton Place*, 235 Mich App 721, 726; 598 NW2d 633 (1999).

The grant of summary disposition may be premature when discovery is ongoing. *C D Barnes Assocs v Star Heaven, LLC*, 300 Mich App 389, 422; 834 NW2d 878 (2013). The mere

Court will affirm where the trial court came to the right result even if for the wrong reason." *Fisher v Blankenship*, 286 Mich App 54, 70; 777 NW2d 469 (2009).

[11] Plaintiff filed a motion to "revise" the trial court's summary disposition order in 2021 and in 2024. At that time, plaintiff filed a proposed second amended complaint. Curiously, plaintiff did not file the proposed amended complaint in 2016 or explain the delay in his filing.

fact that the discovery period is open does not render the trial court's decision to grant summary disposition erroneous. *Id*. Rather, the appropriate inquiry is whether further discovery stands a fair chance of uncovering factual support for the nonmoving party's position. *Id*. Additionally, "a party opposing summary disposition cannot simply state that summary disposition is premature without identifying a disputed issue and supporting that issue with independent evidence." *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009). The party opposing summary disposition must offer affidavits, MCR 2.116(H), delineating the probable testimony to support its position. *Id*. MCR 2.116(H)(1) states, "A party may show by affidavit that the facts necessary to support the party's position cannot be presented because the facts are known only to persons whose affidavits the party cannot procure."

Plaintiff attached an affidavit from her counsel in response to defendant's motion for summary disposition. However, this affidavit did not identify the persons whose affidavit could not be procured and the anticipated testimony. Instead, plaintiff's counsel offered that he anticipated evidence to show that defendants were not entitled to "quasi-judicial immunity." This affidavit did not comport with the requirement of MCR 2.116(H)(1), and quasi-judicial immunity is not the applicable standard articulated by the *Beauford*, *Spikes*, and *Martin* decisions. The trial court did not err in granting defendant's motion for summary disposition before the close of discovery.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Christopher M. Murray
/s/ Anica Letica

-13-