VANDONKELAAR v KID'S KOURT, LLC

Docket No. 292856. Submitted September 8, 2010, at Grand Rapids. Decided September 30, 2010, at 9:00 a.m.

Chadwick Vandonkelaar, a minor, by his next friend, Tonya L. Slager, his mother, brought an action in the Ottawa Circuit Court against Kid's Kourt, L.L.C., and Maryanne Barringer, seeking damages for injuries sustained at defendants' daycare center when a metal pipe holding a large roll of paper dislodged and plaintiff's finger was crushed and lacerated. Defendants admitted liability in relation to plaintiff's premises-liability claim, but contested the extent of the damages. Defendants moved for leave to file a notice of nonparties at fault and to amend their affirmative defenses. Defendants sought to designate plaintiff's parents as nonparties at fault for their alleged failure to follow the prescribed course of medical treatment for plaintiff after surgery was performed on his finger. Defendants also sought to add affirmative defenses that alleged that plaintiff's injuries were caused by acts or omissions of his parents that were beyond the control of defendants and to reserve the right to have the trier of fact allocate fault under MCR 2.112(K). The parties agreed that plaintiff's parents were protected by parental immunity, considering that the parents' alleged inaction and failures pertained to plaintiff's medical care. The parties disagreed regarding the effect of that immunity on the question whether fault could be allocated to the parents as nonparties, thereby potentially minimizing the extent of the damages for which defendants would be liable. The court, Edward R. Post, J., denied the motion, concluding that the immunity enjoyed by plaintiff's parents precluded defendants from naming them as nonparties at fault because their immunity exempted them from any legal duty to obtain medical care for plaintiff. Defendants appealed by leave granted.

The Court of Appeals *held*:

1. Under the principles of joint and several liability existing before the enactment of the comparative-fault statutes, MCL 600.2956, MCL 600.2957, and MCL 600.6304, defendants and plaintiff's parents could only have been held severally liable

because their negligence did not produce a single, indivisible injury, and a court could not have imposed joint and several liability.

2. The purpose of enacting the comparative-fault statutes was to eliminate joint and several liability in situations in which such liability existed. The comparative-fault statutes were not applicable here because this case was not one in which there would have been joint and several liability before the enactment of the comparative-fault statutes. The comparative-fault statutes are inapplicable with respect to fact patterns entailing multiple torts separated in time, multiple torts separated by individual causal chains, and multiple torts that did not produce a single, indivisible injury.

3. There was no dispute that plaintiff's parents did not contribute to the cause of plaintiff's injuries arising from the incident at the daycare center, although their inaction may have caused plaintiff to later suffer separate, more extensive, and divisible damage.

4. "Injury" and "damages," while interrelated, are two distinct concepts for purposes of the comparative-fault statutes. Damages can only be the result of an injury. Damages cannot arise on their own, but must flow from an injury.

5. When subsections (1)(b) and (2) of MCL 600.6304 are read together, consideration of the causal relation between the conduct and the claimed damages means consideration of conduct that jointly contributed to the injury and the damages flowing from that particular conduct and resulting injury. The subsections do not direct a trier of fact to consider damages unrelated to conduct that produced or caused the underlying injury. The conduct of plaintiff's parents constituted a possible subsequent, separate tort that was not part of the causal chain with respect to the finger injuries that occurred at the daycare center, but initiated a new causal chain leading to its own set of damages, which plaintiff could not recover because of parental immunity.

6. The conduct or inaction of plaintiff's parents was not the factual or proximate cause of plaintiff's joint and tendon injuries suffered at the daycare center. The parents' conduct could not constitute "fault" for purposes of the statutory definition of "fault" found in MCL 600.6304(8).

7. As a matter of law, defendants were the only parties at fault and there were no other tortfeasors with respect to the conduct that was the factual and proximate cause of the injuries to plaintiff's finger at the daycare center. Thus, any presumed

negligence by plaintiff's parents in regard to plaintiff's medical treatment after the injuries occurred at the daycare center did not trigger the need to assess their fault for purposes of the comparative-fault statutes.

Affirmed and remanded.

MURRAY, J., dissenting, stated two reasons for not joining the majority opinion. First, the majority decided this case on the basis of a theory neither raised nor decided in the trial court and not raised in the Court of Appeals. Second, the majority erred by holding that the comparative-fault statutes did not apply to this case. The parents' alleged failure to take the child to the prescribed follow-up care was not a separate tort that initiated a new causal chain leading to its own set of damages. Rather, the permanent injury to plaintiff's finger was an element of the damages that plaintiff sought to recover from defendants. An argument could be made that the parents at least in part caused that damage by breaching their duty to provide proper medical care to plaintiff. Consequently, the injury at the daycare center, the immediate harm that was caused, and any lasting damage are all part of plaintiff's lawsuit and, as in all cases involving nonparties at fault, defendants asserted that more than one potential person caused at least some of the harm at issue. Because the comparative-fault statutes reveal a legislative intent to allocate liability according to the relative fault of all persons contributing to the accrual of a plaintiff's damages, defendants should have been allowed to argue to the jury that plaintiff's parents were at least partially at fault for some of the damages plaintiff suffered. Plaintiff's parents had a common-law duty to provide appropriate medical care for plaintiff, and the doctrine of parental immunity did not abrogate this duty. Therefore, the existence of parental immunity cannot preclude an allocation of fault under the comparative-fault statutes. The trial court's order should be reversed, and the case should be remanded for further proceedings.

NEGLIGENCE — COMPARATIVE-FAULT STATUTES — JOINT LIABILITY — SEVERAL LIABILITY.

The purpose of enacting the comparative-fault statutes was to eliminate joint and several liability in situations in which that liability exists; the comparative-fault statutes are inapplicable with respect to fact patterns entailing multiple torts separated in time, multiple torts separated by individual causal chains, and multiple torts that did not produce a single, indivisible injury (MCL 600.2956, 600.2957, 600.6304).

*Buckfire & Buckfire, P.C.* (by *Thomas N. Economy* and *George G. Burke, III*), for plaintiff.

*Smith Haughey Rice & Roegge* (by *Marilyn S. Nickell Tyree*) for defendants.

Before: MURPHY, C.J., and SAWYER and MURRAY, JJ.

MURPHY, C.J. Defendants appeal by leave granted the trial court's order denying their motions to file a notice of nonparties at fault and to amend their affirmative defenses, along with the court's order denying defendants' motion for reconsideration. This premises-liability case arose from injuries to his finger suffered by plaintiff, Chadwick Vandonkelaar (Chad), a minor, at defendants' daycare center. And defendants, while admitting liability, contended that some fault should be allocated to Chad's parents because they were negligent in failing to follow a prescribed course of medical treatment after surgical repair of the finger. The trial court, relying on *Romain v Frankenmuth Mut Ins Co*, 483 Mich 18; 762 NW2d 911 (2009), held that there could be no allocation of fault in regard to the parents because they were immune from suit, which necessarily meant that they had no "legal duty" to obtain proper medical care, a prerequisite under *Romain* before any fault could be attributed to them under the comparative-fault statutes.[1] We affirm, although for reasons different from those offered by the trial court. We conclude that the comparative-fault statutes have no application in this case because, as a matter of law and indisputably, defendants were the only parties at fault and there were no other tortfeasors *with respect to the conduct that was the factual and proximate cause of*

---

[1] When we speak of the comparative-fault statutes, we refer to MCL 600.2956, MCL 600.2957, and MCL 600.6304.

*the injuries to Chad's finger that occurred at the daycare
center.* Any presumed negligence by the parents in regard
to Chad's medical treatment after the injuries occurred at
the daycare center did not trigger the need to assess their
fault for purposes of the comparative-fault statutes, given
that such negligence was not part of the causal chain in
regard to his finger's becoming crushed and lacerated in
the first place. Rather, any negligent conduct by the
parents constituted a subsequent, separate tort that ini-
tiated a new causal chain leading to its own set of
damages, which, we note, would not be recoverable by
Chad because of parental immunity. See *Plumley v Klein*,
388 Mich 1, 8; 199 NW2d 169 (1972).

## I. BACKGROUND

Chad, six years old at the time, sustained injuries
while at defendants' daycare center in May 2007. Chad
placed his right middle finger into the end of a metal
pipe that held a large roll of paper, and the pipe
dislodged from the paper-roller frame, crushing and
lacerating Chad's finger. The preoperative diagnosis
indicated that Chad suffered a "middle finger extensor
tendon injury" and an "[o]pen distal interphalangeal
joint injury." Surgery on the finger was performed by
Dr. Donald Condit, and the surgical procedure entailed
repair of the extensor tendon, along with "middle finger
debridement and repair with pinning of distal interpha-
langeal joint injury."

Defendants admitted their liability in relation to a
premises-liability claim pursued by Chad, through his
mother, Tonya L. Slager, as next friend, in October
2008, but defendants contested the extent of the dam-
ages.[2]

---

[2] The trial court dismissed the claims of gross negligence and nuisance
on defendants' motion for summary disposition.

The trial court limited discovery "to the question of the mechanics of the injury" and to Chad's "reaction, pain, and other damages."

In April 2009, defense counsel had the opportunity to meet with Dr. Condit, and they discussed the doctor's findings and opinions concerning Chad's injuries, treatment, and prognosis. Defense counsel averred, on the basis of the conversation at this meeting, that Dr. Condit had prescribed physical therapy once a week for four weeks following the surgery, but Chad had only attended an initial evaluation and one therapy session. Defense counsel further averred that Dr. Condit had indicated that it was his intent to have Chad attend at least 8 to 12 physical therapy sessions over a three-month period in order to improve the finger's range of motion as well as to alleviate stiffness and swelling in the fingertip. According to the affidavit filed by defense counsel, Dr. Condit informed counsel that the failure to continue with the therapy had a "very significant" effect on Chad's recovery.

On the basis of this information, defendants moved for leave to file a notice of nonparties at fault and to amend their affirmative defenses. Defendants sought to designate Chad's parents as nonparties at fault for their failure to follow Dr. Condit's advice and failure to ensure Chad's attendance at follow-up physician appointments and physical therapy. Defendants also sought to add affirmative defenses, alleging that Chad's injuries were caused by acts or omissions by his parents that were beyond the control of defendants and reserving the right to have the trier of fact allocate fault under MCR 2.112(K).[3]

---

[3] MCR 2.112(K) incorporates MCL 600.2957 and MCL 600.6304 and addresses procedural and notice requirements with respect to fault allocation.

At the hearing on the motions, the parties agreed that Chad's parents were immune from civil liability, considering that their alleged inaction and failures pertained to Chad's medical care. Indeed, in *Plumley*, 388 Mich at 8, our Supreme Court abolished general intrafamily tort immunity, but with some exceptions, holding:

> A child may maintain a lawsuit against his parent for injuries suffered as a result of the alleged ordinary negligence of the parent. Like our sister states, however, we note two exceptions to this new rule of law: (1) where the alleged negligent act involves an exercise of reasonable parental authority over the child; and (2) where the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care.

See also *Spikes v Banks*, 231 Mich App 341, 348; 586 NW2d 106 (1998).[4]

Even though there was agreement that Chad's parents were protected by immunity, the parties vigorously disagreed about the effect of that immunity on the question whether fault could be allocated to the parents as nonparties, thereby potentially minimizing the extent of the damages that could be the responsibility of defendants. More specifically, the crux of the question in the trial court focused on whether a person or entity protected by immunity could nonetheless be named as a

---

[4] In determining whether a defendant was exercising reasonable parental authority, the question to be answered is not whether the defendant acted negligently, but whether the alleged act reasonably fell within one of the *Plumley* exceptions. *Spikes*, 231 Mich App at 348-349; *Phillips v Deihm*, 213 Mich App 389, 395; 541 NW2d 566 (1995). Here, the inaction at issue reasonably fell within one of the *Plumley* exceptions because Chad's parents were clearly exercising their discretion with respect to the provision of medical services and care. Again, there was and is no dispute on this matter.

nonparty at fault. In answering that question, our Supreme Court's holding in *Romain* made it necessary to determine whether the nonparty owed a "legal duty" to the injured person. In *Romain*, 483 Mich at 20-22, the Michigan Supreme Court ruled as follows concerning the comparative-fault statutes:

> We write briefly to eliminate a conflict between two published Court of Appeals opinions. Specifically, we overrule the statement in *Kopp v Zigich* [268 Mich App 258, 260; 707 NW2d 601 (2005)] that "a plain reading of the comparative fault statutes does not require proof of a duty before fault can be apportioned and liability allocated." That is an incorrect statement of Michigan law. In *Jones v Enertel, Inc* [254 Mich App 432, 437; 656 NW2d 870 (2002)], the Court of Appeals held that "a duty must first be proved before the issue of fault or proximate cause can be considered." Under the "first out" rule of MCR 7.215(J)(1), the *Kopp* panel should have followed *Jones* or declared a conflict under MCR 7.215(J)(2). Because the *Kopp* panel did not declare a conflict, *Jones* is the controlling precedent and proof of a duty *is* required "before fault can be apportioned and liability allocated" under the comparative fault statutes, MCL 600.2957 and MCL 600.6304.
>
> In addition to being the controlling precedent under the court rules, *Jones* correctly stated Michigan negligence law; *Kopp* did not. As noted by this Court in *Riddle v McLouth Steel Products Corp* [440 Mich 85, 99; 485 NW2d 676 (1992)]:
>
> " 'In a common law negligence action, before a plaintiff's fault can be compared with that of the defendant, it obviously must first be determined that the defendant was negligent. It is fundamental tort law that before a defendant can be found to have been negligent, it must first be determined that the defendant owed a legal duty to the plaintiff.' "
>
> The same calculus applies to negligent actors under the comparative fault statutes. A common-law negligence

claim requires proof of (1) duty; (2) breach of that duty; (3) causation, both cause in fact and proximate causation; and (4) damages. Therefore, under Michigan law, a legal duty is a threshold requirement before there can be any consideration of whether a person was negligent by breaching that duty and causing injury to another. Thus, when the Legislature refers to the common-law term "proximate cause" in the comparative fault statutes, it is clear that for claims based on negligence " 'it must first be determined that the [person] owed a legal duty to the plaintiff.' " Additionally, MCL 600.6304(8) includes in the definition of fault "a breach of a legal duty . . . that is a proximate cause of damage sustained by a party." Before there can be "a breach of a legal duty," there must be a legal duty. Without owing a duty to the injured party, the "negligent" actor could not have proximately caused the injury and could not be at "fault" for purposes of the comparative fault statutes. [Citations omitted; some alterations in original.]

The trial court concluded that the immunity enjoyed by Chad's parents precluded defendants from naming them as nonparties at fault because their immunity exempted them from having any legal duty to obtain medical care for Chad. Accordingly, the trial court denied defendants' motion and the subsequent motion for reconsideration. This Court then granted defendants' application for leave to appeal. *Slager v Kids Court, LLC*, unpublished order of the Court of Appeals, entered July 14, 2009 (Docket No. 292856).

## II. ANALYSIS

For the reasons set forth later in this opinion, we find it unnecessary to determine whether Chad's parents had a legal duty to obtain medical care for him despite their immunity from liability because we conclude that the comparative-fault statutes are simply not implicated regardless of any parental duty.

A. STANDARD OF REVIEW

The issue on which we base our holding concerns interpretation of the comparative-fault statutes. Statutory construction is a question of law subject to review de novo. *Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008).

B. JOINT AND SEVERAL LIABILITY BEFORE ENACTMENT OF THE
COMPARATIVE-FAULT STATUTES

In *Kaiser v Allen*, 480 Mich 31, 37; 746 NW2d 92 (2008), our Supreme Court, examining MCL 600.2957 and MCL 600.6304, stated:

> The tort-reform statutes have abolished joint and several liability in cases in which there is more than one tortfeasor actively at fault. Traditionally, before tort reform, under established principles of joint and several liability, when the negligence of multiple tortfeasors produced a single indivisible injury, the tortfeasors were held jointly and severally liable. *Watts v Smith*, 375 Mich 120, 125; 134 NW2d 194 (1965); *Maddux v Donaldson*, 362 Mich 425, 433; 108 NW2d 33 (1961).

In *Watts*, 375 Mich at 125, the Michigan Supreme Court, quoting *Meier v Holt*, 347 Mich 430, 438-439; 80 NW2d 207 (1956), observed:

> " 'Although it is not always definitely so stated the rule seems to have become generally established that, although there is no concert of action between tort-feasors, if the cumulative effect of their acts is a single, indivisible injury, which it cannot certainly be said would have resulted but for the concurrence of such acts, the actors are to be held liable as joint tort-feasors; whereas, if the results, as well as the acts, are separable, in theory at least, so that it can be said that the act of each would have resulted in some injury, however difficult it may be as a practical matter to establish the exact proportion of injury caused thereby, each can

be held liable only for so much of the injury as was caused by his act.' (1 Cooley on Torts [4th ed], § 86, pp 279, 280)." [Alteration in original.]

Under the principles of joint and several liability, tortfeasors could be held jointly and severally liable despite there being no common duty, common design, or concert of action as long as their negligence produced a single, indivisible injury. *Markley v Oak Health Care Investors of Coldwater, Inc*, 255 Mich App 245, 252; 660 NW2d 344 (2003).

Here, it cannot be concluded that defendants' negligence and the parents' presumed negligence produced a single, indivisible injury, the injuries being a "middle finger extensor tendon injury" and an "[o]pen distal interphalangeal joint injury." Any negligence by the parents was not a cause of the tendon and joint injuries brought about by the occurrence at the daycare center. Rather, the acts of defendants, as well as the results of their tortious conduct, are separable from the acts of the parents, as well as the results of the parents' assumed tortious conduct, so that " ' "it can be said that the act[s] of each would have resulted in some injury, however difficult it may be as a practical matter to establish the exact proportion of injury caused thereby." ' " *Watts*, 375 Mich at 125 (citations omitted). Therefore, under the principles of joint and several liability that existed before the enactment of the comparative-fault statutes, defendants and the parents[5] in the instant case could only have been held severally liable, i.e., liable " ' "only for so much of the injury as was caused by his act." ' " *Id.* (citations omitted). A court could not have imposed joint and several liability.

---

[5] For purposes of this opinion and our analysis, we are effectively treating the two defendants as a single unit and the two parents as a single unit.

C. THE COMPARATIVE-FAULT STATUTES

As indicated in *Kaiser*, 480 Mich at 37, the "tort-reform statutes . . . abolished joint and several liability in cases in which there is more than one tortfeasor actively at fault." Indeed, the Legislature expressed that sentiment in MCL 600.2956, wherein it is provided:

> Except as provided in [MCL 600.6304 (an exception not applicable here)], in an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each defendant for damages is several only and is not joint. However, this section does not abolish an employer's vicarious liability for an act or omission of the employer's employee.

Accordingly, because the purpose of enacting the comparative-fault statutes was to eliminate joint and several liability in situations in which that liability existed, and because the case at bar is not one in which there would have been joint and several liability before enactment of the statutes, the comparative-fault statutes are not applicable here. There was no need for the legislation to address situations in which there would solely be several liability based on existing common law, considering that simple causation-damage principles would effectively result in a tortfeasor's only being held responsible for injuries caused by his or her tortious conduct. However, it is necessary to examine the language in MCL 600.2957 and MCL 600.6304 to see if they are consistent with our conclusion. MCL 600.2957 provides, in relevant part:

> (1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and, subject to [MCL 600.6304], in direct proportion to the person's per-

centage of fault. In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action.

\* \* \*

(3) Sections 2956 to 2960 [MCL 600.2956 to 600.2960] do not eliminate or diminish a defense or immunity that currently exists, except as expressly provided in those sections. Assessments of percentages of fault for nonparties are used only to accurately determine the fault of named parties. If fault is assessed against a nonparty, a finding of fault does not subject the nonparty to liability in that action and shall not be introduced as evidence of liability in another action.

We find nothing in MCL 600.2957 that conflicts with our assessment that the comparative-fault statutes are inapplicable with respect to fact patterns entailing multiple torts separated in time, multiple torts separated by individual causal chains, and multiple torts that did not produce a single, indivisible injury.

MCL 600.6304 provides, in pertinent part:

(1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death involving fault of more than 1 person, including third-party defendants and nonparties, the court, unless otherwise agreed by all parties to the action, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings indicating both of the following:

(a) The total amount of each plaintiff's damages.

(b) The percentage of the total fault of all persons that contributed to the death or injury, including each plaintiff and each person released from liability under [MCL 600.2925d], regardless of whether the person was or could have been named as a party to the action.

(2) In determining the percentages of fault under subsection (1)(b), the trier of fact shall consider both the nature of the conduct of each person at fault and the extent of the causal relation between the conduct and the damages claimed.

(3) The court shall determine the award of damages to each plaintiff in accordance with the findings under subsection (1), . . . and shall enter judgment against each party, including a third-party defendant . . . .

(4) Liability in an action to which this section applies is several only and not joint. Except as otherwise provided in subsection (6) [medical malpractice cases], a person shall not be required to pay damages in an amount greater than his or her percentage of fault as found under subsection (1). . . .

\* \* \*

(8) As used in this section, "fault" includes an act, an omission, conduct, including intentional conduct, a breach of warranty, or a breach of a legal duty, or any conduct that could give rise to the imposition of strict liability, that is a proximate cause of damage sustained by a party.

As indicated already, MCL 600.6304(1)(b) requires the trier of fact to allocate the "percentage of the total fault of all persons that contributed to the *death or injury* . . . ."[6] (Emphasis added.) Again, there is no dispute that Chad's parents did not contribute to the cause of Chad's injuries, i.e., the tendon and joint injuries produced by the underlying occurrence at the daycare center, although their inaction may have caused Chad to later suffer separate, more extensive, and divisible damage. At this point, it is appropriate to note, for purposes of the comparative-fault statutes, that the

---

[6] Because the instant case involves an injury and not a death, we shall solely use the term "injury" for the remainder of this opinion when discussing the statutory language.

concepts of "injury" and "damages," while interrelated, are two distinct concepts. In *Shinholster v Annapolis Hosp*, 471 Mich 540, 552 n 6; 685 NW2d 275 (2004), the Court, construing MCL 600.6304, indicated that "damage cannot arise on its own, but must flow from an injury" and that "[d]amage can only be the result of an injury." The *Shinholster* Court continued, stating, "[F]irst an injury to plaintiff must exist and the trier of fact must then determine whether plaintiff[7] *constituted a proximate cause of such injury before* there is any need for the trier of fact to focus on plaintiff's damages." *Id.* (emphasis added).

As indicated already, MCL 600.6304(2) requires the trier of fact, in "determining the percentages of fault *under subsection (1)(b),*" to "consider both the nature of the conduct of each person at fault and the extent of the causal relation between the conduct and the damages claimed." (Emphasis added.) This language is simply to be incorporated into and made a part of the assessment that must be undertaken in regard to MCL 600.6304(1)(b), which, again, focuses on contribution to the "injury." Accordingly, when subsections (1)(b) and (2) of MCL 600.6304 are read together, consideration of the causal relation between the conduct and the claimed damages means consideration of conduct that jointly contributed to the injury and the damages flowing from that particular conduct and resulting injury. Those statutory subsections, when read together, do not direct a trier of fact to consider damages unrelated to conduct that produced or caused the underlying injury. Once again, the conduct or inaction of Chad's parents

---

[7] *Shinholster* concerned whether any fault could be allocated to the plaintiff's decedent for causing her own death; however, the quoted language would be equally applicable to any other party or nonparty alleged to be at fault for causing an injury or death.

played no role in causing the tendon and joint injuries or the incident producing those injuries. Therefore, MCL 600.6304 would not even permit the trier of fact to consider any injuries that the parents may have caused Chad to suffer. The parents' conduct constituted a possible subsequent, separate tort that was not part of the causal chain with respect to the finger injuries and the occurrence at the daycare center.

Finally, we examine MCL 600.6304(8), which defines "fault" as conduct "that is a proximate cause of damage sustained by a party." This provision must also be read in the context of the "fault" allocation that the trier of fact must make under MCL 600.6304(1)(b). Accordingly, the examination of whether a person's conduct was a "proximate cause of damage sustained by a party," MCL 600.6304(8), necessarily means conduct that contributed to the injury and the damages flowing from that particular conduct and resulting injury. The conduct or inaction of Chad's parents was not the factual or proximate cause of Chad's tendon and joint injuries that he suffered at the daycare center. Accordingly, their conduct could not constitute fault for purposes of the statutory definition of "fault" found in MCL 600.6304(8).

In sum, the comparative-fault statutes are not implicated under the circumstances of this case.[8] However,

---

[8] The dissent takes us to task for deciding this case on a theory that was neither raised in the trial court nor raised or briefed on appeal. We do note that the broad issue raised on appeal and addressed by us concerns whether the comparative-fault statutes are applicable, although we acknowledge that our analysis and approach with respect to that issue differs entirely from the arguments presented by the parties. In *Mack v Detroit*, 467 Mich 186, 206; 649 NW2d 47 (2002), our Supreme Court addressed and analyzed a governmental-immunity issue that was neither raised nor briefed by the parties, but the issue was a topic of discussion at oral argument. The *Mack* Court adamantly opposed the "position that

on remand, and under general principles of tort law, plaintiff will have to prove by a preponderance of the evidence that any claimed damages were the factual and proximate result of defendants' negligence, and defendants' negligence alone, which will potentially afford defendants some protection from being assessed damages that they did not cause. See *Wischmeyer v Schanz,* 449 Mich 469, 484; 536 NW2d 760 (1995); *Moning v Alfono,* 400 Mich 425, 437; 254 NW2d 759 (1977).

### III. CONCLUSION

We hold that the comparative-fault statutes have no application in this case because, as a matter of law and indisputably, defendants were the only parties at fault and there were no other tortfeasors with respect to the conduct that was the factual and proximate cause of the injuries to Chad's finger in the occurrence at the daycare center. Any presumed negligence by the parents in regard to Chad's medical treatment after the

although a controlling legal issue is squarely before this Court, . . . the parties' failure . . . to offer correct solutions to the issue limits this Court's ability to probe for and provide the correct solution." *Id.* at 207. The Court continued by noting that "[s]uch an approach would seriously curtail the ability of this Court to function effectively and . . . actually make oral argument a moot practice." *Id.* At oral argument here, counsel for both parties were questioned regarding whether it could be argued that the comparative-fault statutes were not implicated because there was clearly no fault on the part of Chad's parents in connection with the injury-producing incident. Were we to decide this case on the duty-versus-immunity arguments under the facts presented, we would implicitly be conveying to the bench and bar that the comparative-fault statutes are indeed generally implicated in circumstances in which a party or nonparty was not the proximate cause of a plaintiff's injury or the injury-producing incident. In our estimation, however, this is not a correct legal conclusion for the reasons already stated. Consistently with *Mack,* we find that a controlling legal issue is squarely before us and must be analyzed regardless of the lack of briefing and the failure to raise the issue.

injuries occurred at the daycare center did not trigger the need to assess their fault for purposes of the comparative-fault statutes, given that such negligence was not part of the causal chain in regard to his finger's becoming crushed and lacerated in the first place. Rather, any negligent conduct by the parents constituted a subsequent, separate tort that initiated a new causal chain leading to its own set of damages. However, on remand, and under general principles of tort law, plaintiff will have to prove by a preponderance of the evidence that any claimed damages were caused solely by defendants' negligence.

Affirmed and remanded. Given our resolution of this appeal on grounds not addressed by the parties, we decline to award any party taxable costs. MCR 7.219(A).

SAWYER, J., concurred.

MURRAY, J. (*dissenting*). In this interlocutory appeal, we granted leave to appeal to decide whether the trial court erred in denying defendants' motion for leave to file a notice of nonparties at fault. The trial court had concluded that because the would-be nonparties at fault, the minor child's parents, had parental immunity from their alleged failure to adequately provide medical care to their child, they could not be nonparties at fault under the controlling statute. The majority does not answer the question decided by the trial court and briefed and argued by the parties (and on which we granted leave to appeal), but instead decides that the statute is wholly inapplicable for reasons of its own. With all due respect to my colleagues, I would address the issue decided below and addressed by the parties, and in doing so would hold that the existence of parental immunity does not foreclose an allocation of

fault under the comparative-fault statutes. Accordingly,
I would reverse and remand this case.

I. FACTS AND PROCEEDINGS[1]

The facts of this case are undisputed, and arise out of
the injuries the six-year-old plaintiff sustained while in
defendants' daycare facility on May 9, 2007. The inju-
ries occurred when plaintiff placed his middle finger
into one end of a metal pipe that held a large roll of
paper. The pipe dislodged from the paper-roller frame,
and the child's finger was crushed and lacerated. The
paper roller was homemade and maintained by defen-
dant Maryanne Barringer. Defendants do not contest
their liability under these facts, but instead challenge
the extent of plaintiff's damages.

Seventeen months after the injuries, the child, by his
next friend and mother, Tonya Slager, filed suit, alleging
gross negligence, nuisance, and premises liability. De-
fendants admitted liability on the premises-liability
theory, and the court dismissed plaintiff's gross-
negligence and nuisance claims on defendants' motion
for summary disposition. The court also limited discov-
ery to evidence concerning the occurrence, the extent of
the injuries, and damages.

Before entry of that order, on April 7, 2009, defense
counsel met with the child's treating orthopedic sur-
geon, Dr. Michael Condit, to discuss the doctor's find-
ings and opinions regarding the child's injuries, treat-
ment, and prognosis. Defense counsel averred that
although Dr. Condit had prescribed physical therapy
once a week for four weeks following surgery on the

---

[1] Although the majority opinion has sufficiently detailed the material
facts, I add my version simply to provide the reader with some context
when reviewing my substantive analysis.

finger, the child was dismissed from therapy after only attending the initial evaluation and one session because of his failure to return to therapy. According to defense counsel, Dr. Condit indicated that his intent was for the child to attend at least 8 to 12 sessions over a three-month period to improve the range of motion as well as to alleviate the stiffness and swelling in the fingertip. In Dr. Condit's estimation, the failure to continue therapy had a "very significant" impact on the child's recovery.

Based on the information acquired from Dr. Condit, defendants quickly moved for leave to file a notice of nonparties at fault and to amend their affirmative defenses. The notice sought to designate the child's parents, Tonya Slager and Chadwick Vandonkelaar, Sr., as nonparties at fault for failing to follow Dr. Condit's advice and failing to ensure their son's attendance at follow-up physician appointments and physical therapy. The amended affirmative defenses sought to allege that the injuries were caused by acts or omissions over which defendants had no control and reserved defendants' right to seek fault allocations under MCR 2.112(K).

At the ensuing motion hearing, the parties disputed whether parental immunity precluded an allocation of fault.[2] Siding with plaintiff, the court ruled that parental immunity did preclude an allocation of fault based on our Supreme Court's ruling in *Romain v Frankenmuth Mut Ins Co*, 483 Mich 18; 762 NW2d 911 (2009), which held that the comparative-fault statutes[3] require that a party owe a legal duty before the party may be named a nonparty at fault. The court concluded that the immunity enjoyed by plaintiff's parents precluded their being named nonparties at fault because their immunity exempted them from any legal duties. Ac-

---

[2] Plaintiff did not dispute defendants' summary of Dr. Condit's report.

[3] See MCL 600.2957 and MCL 600.6304.

cordingly, defendants' motions were denied, as was their subsequent motion for reconsideration. We then granted defendants' application for leave to appeal these orders, *Slager v Kids Court, LLC*, unpublished order of the Court of Appeals, entered July 14, 2009 (Docket No. 292856).

## II. ANALYSIS

As they argued in the trial court, defendants maintain on appeal that the tort-reform legislation of 1995 permits naming plaintiff's parents as nonparties at fault and that the court's ruling that parental immunity eliminated any legal duty was erroneous. This argument raises questions concerning statutory interpretation and the existence of a legal duty, both of which are subject to review de novo. *Office Planning Group, Inc v Baraga-Houghton-Keweenaw Child Dev Bd*, 472 Mich 479, 488; 697 NW2d 871 (2005); *Dyer v Trachtman*, 470 Mich 45, 49; 679 NW2d 311 (2004).

In 1995, the Legislature enacted comprehensive tort-reform legislation. *Romain*, 483 Mich at 25 (YOUNG, J., dissenting). An important aspect of this reform was the replacement of the common-law doctrine of joint and several liability with the doctrine of several liability. MCL 600.2956. To this end, the Legislature passed MCL 600.2957 and MCL 600.6304, known as the comparative-fault statutes, which require fact-finders to assess fault in personal injury actions according to an individual's degree of fault irrespective of the individual's involvement in the suit. "The significance of the change is that each tortfeasor will pay only that portion of the total damage award that reflects the tortfeasor's percentage of fault," i.e., the tortfeasor will pay only his " 'fair share liability.' " *Smiley v Corrigan*, 248 Mich App 51, 55; 638 NW2d 151 (2001) (citation omitted).

Section 2957(1) provides:

In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and, subject to section 6304, in direct proportion to the person's percentage of fault. In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action. [MCL 600.2957(1).]

Section 6304 similarly provides, in part:

(1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death involving fault of more than 1 person, including third-party defendants and nonparties, the court, unless otherwise agreed by all parties to the action, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings indicating both of the following:

(a) The total amount of each plaintiff's damages.

(b) The percentage of the total fault of all persons that contributed to the death or injury, including each plaintiff and each person released from liability under [MCL 600.2925d], regardless of whether the person was or could have been named as a party to the action.

\* \* \*

(2) In determining the percentages of fault under subsection (1)(b), the trier of fact shall consider both the nature of the conduct of each person at fault and the extent of the causal relation between the conduct and the damages claimed. [MCL 600.6304.]

"Fault" is defined broadly to include "an act, an omission, conduct, including intentional conduct, a breach of warranty, or a breach of a legal duty, or any conduct that could give rise to the imposition of strict

liability, that is a proximate cause of damage sustained by a party." MCL 600.6304(8). Notably, the assessment of fault against a nonparty does not subject the non-party to liability, but is only used to determine the percentage of fault, if any, of the named parties in an action. MCL 600.2957(3).

Recently, our Supreme Court in *Romain* clarified what is necessary to allocate nonparty fault under the comparative-fault statutes for negligence claims. Specifically, the Court affirmed the holding of *Jones v Enertel, Inc*, 254 Mich App 432, 437; 656 NW2d 870 (2002), that "a duty must first be proved before the issue of fault or proximate cause can be considered." *Romain*, 483 Mich at 20.[4] The *Romain* Court, however, did not address whether the existence of immunity abolishes a duty per se (and therefore precludes an assessment of percentage of fault under the comparative-fault statutes as the trial court found) or whether an immunity serves only to protect the non-party from being personally subject to liability when a duty otherwise exists. In fact, *Romain* did not discuss immunity at all, but instead focused on whether a duty was required to be proved before a person could be named a nonparty at fault.

### A. IS THERE A DUTY?

Concerning the threshold issue of duty in the case at hand, it is well established that parents have a duty to provide for the support and maintenance of their minor children, including the provision of medical care. Ad-

---

[4] In reaching this decision, the *Romain* Court overruled this Court's most recent pronouncement on this issue in *Kopp v Zigich*, 268 Mich App 258, 260; 707 NW2d 601 (2005), that "a plain reading of the comparative fault statutes does not require proof of a duty before fault can be apportioned and liability allocated." *Romain*, 483 Mich at 20.

dressing this point directly, this Court has stated that a "parent's duty to support a minor child requires the parent to furnish all necessaries essential to the health and comfort of the child, including, for example, medical care." *Manley v Detroit Auto Inter-Ins Exch*, 127 Mich App 444, 453; 339 NW2d 205 (1983), aff'd in part and rev'd in part on other grounds 425 Mich 140 (1986).

That this is a legal as well as a moral duty is universally recognized in jurisdictions throughout this country, and Michigan is no exception. *Plumley v Klein*, 388 Mich 1, 8 & n 6; 199 NW2d 169 (1972) (referring to the rule that a minor child may sue his parent in tort, and therefore in negligence, as the "original common-law rule"); 59 Am Jur 2d, Parent and Child, § 45, p 213 ("A [parent's] duty to support and maintain minor children is universally recognized . . .[e]ven in the absence of statute . . . ."); see also *Fonken v Fonken*, 334 Ark 637, 642; 976 SW2d 952 (1998) ("[A] parent has a legal duty to support his minor children, regardless of the existence of a support order."); *Stecyk v Bell Helicopter Textron, Inc*, 53 F Supp 2d 794, 800 (ED Pa, 1999) ("Pennsylvania imposes an independent common law duty upon the parent to support a minor child . . . ."), citing *Blue v Blue*, 532 Pa 521, 529; 616 A2d 628 (1992); *RJD v Vaughan Clinic, PC*, 572 So 2d 1225, 1227 (Ala, 1990) ("Alabama has long recognized the principle that parents are, by the common law, under the legal duty of providing medical attention for their children."); *Rounds Bros v McDaniel*, 133 Ky 669, 674; 118 SW 956 (1909) (" 'Three leading duties of parents as to their legitimate children are recognized at the common law: First, to protect; second, to educate; third, to maintain them.' "), quoting Schouler on Domestic Relations, p 415; *Niewiadomski v United States*, 159 F2d 683, 686 (CA 6, 1947) ("At common law a parent is charged with the duty of educating and supporting a minor

child . . . ."); *Doughty v Engler*, 112 Kan 583, 585; 211 P 619 (1923) (stating that parents have a legal obligation independent of statute to support their minor child). Consequently, these parents had a common-law duty to provide the appropriate medical care for their child. As such, unless their parental immunity provides otherwise, they could be named nonparties at fault.

### B. THE IMPACT OF AN IMMUNITY

Although parents traditionally enjoyed immunity from suit by their minor child should they breach the duties owed to the child, the modern rule is that a child may sue his parents for negligence. *Plumley*, 388 Mich at 8. An exception to this rule in Michigan, however, extends immunity to parents "where the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care." *Id.* According to plaintiff, the existence of this immunity abolished any duty his parents owed him.

Resolution of the effect of an immunity on a duty, however, is not an open question. Indeed, as explained later in this opinion, though an immunity will prevent a party from *being held liable* for breach of a duty, the preexisting duty remains intact despite the liability shield provided by the immunity. Our Supreme Court has recognized this distinction in the context of the "highway exception" to governmental immunity[5] and has concluded that the availability of an immunity is relevant to whether recourse exists for the breach of an *existing duty*. *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 157; 615 NW2d 702 (2000). As *Nawrocki* explained:

---

[5] MCL 691.1402(1).

Because immunity necessarily implies that a "wrong" has occurred, we are cognizant that some tort claims, against a governmental agency, will inevitably go unremedied. *Although governmental agencies may be under many duties, with regard to services they provide to the public, only those enumerated within the statutorily created exceptions are legally compensable if breached. [Id.* (emphasis added).]

Accordingly, the availability of an immunity has no bearing on whether a duty exists, but rather focuses on redressability. In other words, an immunity functions "as a defense so that acts that would otherwise be tortious are permissible because of the circumstances in which they occur." *Domestic Linen Supply & Laundry Co v Stone,* 111 Mich App 827, 833; 314 NW2d 773 (1981).

Significantly, the language of the comparative-fault statutes reflects this distinction. Concerning immunity, MCL 600.2957(3) provides:

Sections 2956 to 2960 [MCL 600.2956 to MCL 600.2960] *do not eliminate or diminish a defense or immunity that currently exists,* except as expressly provided in those sections. Assessments of percentages of fault for nonparties are used only to accurately determine the fault of named parties. If fault is assessed against a nonparty, a finding of fault does not subject the nonparty to liability in that action and shall not be introduced as evidence of liability in another action. [Emphasis supplied.]

By stating that a fact-finder's assessment of the percentage of a nonparty's fault does not eliminate or diminish an immunity, § 2957(3) necessarily presupposes that an immunity does not abrogate a duty. Otherwise, there would be no need to preserve that immunity after fault has been allocated. Put differently, if an immunity were to abrogate a duty, an allocation of fault could never come into play because as *Romain*

held, a nonparty's duty is necessary to allocate non-party fault in the first place. Without an allocation of fault, no predicate would exist to eliminate the immunity § 2957(3) otherwise seeks to preserve. Under the interpretation offered by plaintiff, the reference to immunity in § 2957(3) would be rendered superfluous, and we must avoid a construction of a statute that would render part of the statute surplusage or nugatory. *Robinson v City of Lansing*, 486 Mich 1, 21; 782 NW2d 171 (2010) (citation omitted).

In reaching the opposite conclusion, the trial court cited the Black's Law Dictionary (8th ed) definition of "immunity" as an "exemption from a duty, liability" and another source that defined "immunity" as an "[e]xemption from normal legal duties, penalties, or liabilities, granted to a special group of people." However, saying that one is "exempt" from a legal duty is not the same as saying that no duty exists. Indeed, according to the *Random House College Dictionary* (rev ed, 1988), "exempt" means (as a verb) "to free from an obligation or liability to which others are subject" or (as an adjective) that one is "released from, or not subject to, an obligation, liability . . . ." Clearly, to be freed or released from an obligation does not mean that there is no obligation to begin with. Instead, it means one cannot be liable for failing to adhere to the obligation. Otherwise, there would exist nothing from which one would be freed or released.

From the foregoing, it follows that the immunity enjoyed by plaintiff's parents did not abolish their duty to seek appropriate medical care in the first place. Indeed, a number of our sister states granting parental immunity have also found that such immunity does not serve to abolish an already existing duty. See, e.g., *Doering v Copper Mountain, Inc*, 259 F3d 1202, 1216

(CA 10, 2001) ("When the Colorado Supreme Court adopted the parental immunity doctrine, it indicated that courts adhering to the doctrine did so for public policy reasons, not because parents owe no duty of due care to their children."), citing *Trevarton v Trevarton*, 151 Colo 418, 421-422; 378 P2d 640 (1963); *Larson v Buschkamp*, 105 Ill App 3d 965, 969; 435 NE2d 221 (1982) (stating that the doctrine of parental immunity is a procedural rather than substantive bar to actions between a parent and child); *Emery v Emery*, 45 Cal 2d 421, 427 n 3; 289 P2d 218 (1955) ("The parent's immunity . . . from tort liability is based on the minor child's disability to sue rather than on the absence of a violated duty."); *Davis v Smith*, 126 F Supp 497, 504 (ED Pa, 1954) (stating that parental immunity "is given as a means of enabling the parent to discharge his duties in preserving the domestic tranquility"), aff'd 253 F2d 286 (CA 3, 1958); *Dunlap v Dunlap*, 84 NH 352, 372; 150 A 905 (1930) ("Such immunity as the parent may have from suit by the minor child for personal tort, arises from a disability to sue, and not from lack of violated duty.").[6]

Therefore, since the duty to seek appropriate medical care was incumbent upon the parents irrespective of their immunity, the doctrine of parental immunity does not as a matter of law preclude an allocation of fault under the comparative-fault statutes. Instead, the immunity plaintiff's parents enjoy insulates them from liability should the fact-finder allocate a percentage of

---

[6] The historical approach to parental immunity in Michigan reflects the same distinction. In *Plumley* the Court overturned a prior decision, *Elias v Collins*, 237 Mich 175; 211 NW 88 (1926), that had enforced parental immunity under all circumstances. *Plumley*, 388 Mich at 8. But in doing so, the *Plumley* Court did not *create* new duties vis-à-vis parent and child. Instead, it merely lifted the immunity granted parents for violation of most of those existing common-law duties.

fault to them for any breach of that duty,[7] MCL
600.2957(3), and they were subsequently sued. Additionally, a holding that the existence of parental immunity does not preclude an allocation of fault is consistent not only with the language of § 2957(3), but also
with the broad purpose of the comparative-fault statutes, which is to ensure that defendants are only liable
for their " 'fair share liability,' " *Smiley*, 248 Mich App
at 55, and therefore is in keeping with our obligation to
construe statutes "reasonably, in a manner that is
consistent with the purpose of the legislation," *Koivisto
v Davis*, 277 Mich App 492, 497; 745 NW2d 824 (2008).
(Citation omitted.)

Plaintiff argues that in overruling *Kopp v Zigich*, 268
Mich App 258; 707 NW2d 601 (2005), the *Romain* Court
rejected the notion that fault can be allocated against a
nonparty who is immune from liability. However, in
finding an allocation of fault appropriate, the *Kopp*
Court actually sidestepped the issue concerning immunity.[8] Instead, the rationale underlying the *Kopp* decision was that the plaintiff's employer (a nonparty to the
action) could be a proper party at fault under the
exclusive-remedy provision of the Worker's Disability
Compensation Act (WDCA), MCL 418.101 *et seq.*, even
though that act also rendered the employer immune
from a suit in negligence. *Kopp*, 268 Mich App at 261. In
other words, *Kopp* did not rely on or even discuss the
interplay between a party's immunity and a party's

---

[7] The contrary holding of *Byrne v Schnieder's Iron & Metal, Inc*, 190
Mich App 176, 185; 475 NW2d 854 (1991), was made before the
enactment of tort-reform legislation and, therefore, has no bearing on
this conclusion.

[8] In this respect, defendants' reliance on *Dresser v Cradle of Hope
Adoption Ctr, Inc*, 421 F Supp 2d 1024, 1027 (ED Mich, 2006), is
misplaced since that court misinterpreted *Kopp* on this issue of immunity.

duty in determining that an allocation of fault was appropriate. Rather, *Kopp* looked to the broad definition of "fault" contained in MCL 600.6304(8) and concluded that the exclusive-remedy provision of the WDCA was a sufficient basis for allocating fault under that definition. *Id.* at 260-261. It was from this line of reasoning that *Kopp* concluded that no proof of a duty was required before fault could be allocated, and it is this conclusion that the *Romain* Court specifically overruled. *Romain*, 483 Mich at 20. Thus, the effect of immunity on the allocation of fault was untouched by *Romain* and is ripe for our review.[9]

Finally, plaintiff claims that because proximate, or legal, cause is essentially a policy question overlapping the concept of duty, see *Moning v Alfono*, 400 Mich 425, 438-439; 254 NW2d 759 (1977), it must be determined at this juncture whether the conduct of plaintiff's parents was the proximate cause of plaintiff's injuries. The thrust of plaintiff's argument on this point is that since public policy renders parents immune from legal responsibility for certain conduct, that same policy necessarily makes it impossible for the same conduct to be the proximate, or legal, cause of a plaintiff's injuries. However, even assuming that such an analysis is not premature, where duty and proximate clause intersect is on the issue of foresee-

---

[9] In a similar vein, plaintiff claims that in affirming *Jones*, the *Romain* Court approved of the reasoning in *Jones* that "a party adjudicated to be without fault may not have fault allocated to him under the guise of the doctrine of several liability." *Jones*, 254 Mich App at 437. This statement, however, has no effect on this conclusion because, as previously noted, the existence of immunity does not abrogate the parents' duty. And in any event, the affirmative defense negating an allocation of fault in *Jones* was the open-and-obvious-danger doctrine—a doctrine that our Supreme Court has determined attacks the duty element in a common-law negligence action. *Id.* at 437, citing *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992).

ability. *Id.* at 439, citing *Palsgraf v Long Island R Co,*
248 NY 339; 162 NE 99 (1928). In contrast, the very
foundations of parental immunity are *"the duties and
responsibilities* [parents] assume within the house-
hold" as well as the need "to avoid judicial interven-
tion into the core of parenthood and parental disci-
pline . . . ." *Hush v Devilbiss Co,* 77 Mich App 639,
645-646; 259 NW2d 170 (1977) (emphasis added).
And in any event, plaintiff has neither argued nor
cited any authority for the proposition that the policy
considerations underlying parental immunity were in
any way related to matters of foreseeability.

For two reasons, I cannot join the majority opinion.
First, and as noted at the outset, the majority is admit-
tedly deciding this case based upon a theory neither raised
nor decided below, nor raised before our Court. As ex-
plained in my partial dissent in *People v Michielutti,* 266
Mich App 223, 230-231; 700 NW2d 418 (2005), rev'd in
part 474 Mich 889 (2005):

> As any casual reader of the Michigan Appeals Reports
> will recognize, we quite frequently inform parties that
> we will not address an issue not raised or decided by the
> trial court, on the basis that it is not properly preserved.
> *Adam v Sylvan Glynn Golf Course,* 197 Mich App 95, 98;
> 494 NW2d 791 (1992); *People v Stacy,* 193 Mich App 19,
> 28; 484 NW2d 675 (1992). We are likewise disinclined to
> review issues that are actually raised by the parties, but
> not adequately briefed. See, e.g., *Steward v Panek,* 251
> Mich App 546, 558; 652 NW2d 232 (2002). The general
> rationale supporting these prudent rules of appellate
> procedure is that it is best to decide issues with the
> benefit of briefing and argument. *Bradley v Saranac Bd
> of Ed,* 455 Mich 285, 302-303; 565 NW2d 650 (1997).
> Although we will, at times, decide a legal issue when the
> facts necessary to its resolution are properly before us,
> that is usually invoked when a party raises the issue to

this Court as an alternative means to affirm. See *Spruytte v Owens*, 190 Mich App 127, 132; 475 NW2d 382 (1991).

We should likewise refuse to engage our discretion in deciding this case on a theory that was not presented by the parties.

Second, the majority errs by holding that the comparative-fault statutes are inapplicable to this case. The parents' alleged failure to take the child to the prescribed follow-up care is not as the majority states a "separate tort that initiated a new causal chain leading to its own set of damages." Rather, as plaintiff's complaint itself makes clear, the alleged permanent injury to the child's finger is an element of the damages plaintiff seeks to recover against defendants. Based on Dr. Condit's statements, surely there is an argument to be made that plaintiff's parents at least in part caused that damage by breaching their duty to provide proper medical care to their son. Consequently, the injury at the child-care facility, the immediate harm that was caused, and any lasting damage are all part of plaintiff's lawsuit, and as in all nonparty-at-fault cases, defendants are asserting that more than one person potentially caused at least some of the damages at issue. And because these statutes reveal "a legislative intent to allocate liability according to the relative fault of *all persons contributing to the accrual of a plaintiff's damages*," *Lamp v Reynolds*, 249 Mich App 591, 596; 645 NW2d 311 (2002), citing *Wysocki v Felt*, 248 Mich App 346, 364; 639 NW2d 572 (2001), defendants should be allowed to argue to the jury that plaintiff's parents are at least partially at fault for some of the damages plaintiff has suffered. (Emphasis supplied.) The statutory language already discussed supports that intent, and the majority's decision that the parents are not capable of being nonparties at fault guts the entire statutory scheme.

III. CONCLUSION

Plaintiff's parents had a common-law duty to provide appropriate medical care for their child, and the doctrine of parental immunity did not abrogate this duty. Therefore, the existence of parental immunity cannot preclude an allocation of fault under the comparative-fault statutes. As the trial court erred by ruling otherwise, I would reverse the trial court's order denying defendants' motions for leave to file a notice of nonparties at fault and to amend their affirmative defenses and remand for further proceedings.