Shapiro, P.J.
*339 In this interlocutory appeal[1] respondents assert that the trial court erred by denying their *340 motion for a proposed jury instruction based on MCL 722.634 in the adjudicative phase of a child protection proceeding. For the reasons set forth in this opinion, we reverse the trial court's decision not to give the jury instruction and remand for proceedings consistent with this opinion.
I. FACTS
On February 6, 2017, respondent-mother gave birth to the couple's third child, AP. AP was born at home with the assistance of a midwife, Sandra McCurdy. The day after AP's birth, McCurdy visited respondent's home and expressed concern to respondent-mother that AP was suffering from jaundice, a condition common to newborns that, while potentially life-threatening, readily responds to treatment. McCurdy suggested that respondents take AP to the doctor, but they did not do so. With respondents' permission, McCurdy contacted a doctor regarding AP's jaundice, but respondents did not reply when the doctor's office tried to reach them. Respondents *405 claim to be members of a Christian sect that believes that no medical treatment may be administered other than first aid. According to the petition, AP's health continued to degenerate, and she died on February 9, 2017.
On that morning, respondents found AP in an unresponsive state. They did not contact emergency medical services but instead prayed for the child's resurrection. Respondent-father later reported that he attempted a "rescue breath" on AP but did not know how to perform CPR on a baby; he stated that the only thing he knew to do was to "pray and ask for help from God." Respondents also called members of their church, who came to the home and prayed with them. The police were notified about AP's death eight hours *341 later. An autopsy revealed that AP's cause of death was "unconjugated hyperbilirubinemia with kernicterus."[2] The doctor who performed the autopsy explained that "[j]aundice is a very treatable condition" and that AP likely would have survived if respondents had sought medical attention.
Following AP's death, a Family Team Meeting[3] was held on March 7, 2017. According to petitioner, at that meeting, respondents stated that despite AP's symptoms, they chose to "believe in the word of God over the symptoms" and believed that any medical condition that could not be controlled with basic first aid should be left in the hands of God. Concerned that respondents would decline to seek medical treatment for their remaining two children, MP and JP, petitioner filed a termination petition,[4] which was authorized by the court. MP and JP were then removed from respondents' custody and placed with their maternal grandparents.
*342 Approximately two months later, the trial court issued an ex parte order returning the children to respondents on condition that they comply with a safety plan and refrain from using physical discipline. Six days later, respondents requested that the trial court amend the ex parte order to provide that respondents "may only use physical discipline of any kind upon the children as permitted under Michigan law" on the basis that they sincerely held a religious belief that physical discipline should be used. The children were again removed from respondents' custody for failure to comply with the court's order after it was alleged that respondents said that they would not obey the court order and that respondent-father said that "the children are being trained with physical discipline in obeying my words."
The matter was then scheduled for an adjudication trial before a jury. Prior to *406 trial, respondents requested a jury instruction based on MCL 722.634, which provides:
A parent or guardian legitimately practicing his religious beliefs who thereby does not provide specified medical treatment for a child, for that reason alone shall not be considered a negligent parent or guardian. This section shall not preclude a court from ordering the provision of medical services or nonmedical remedial services recognized by state law to a child where the child's health requires it nor does it abrogate the responsibility of a person required to report child abuse or neglect.
Respondents argued that because their defense was based on this statute, the court should provide an instruction reflecting its content. Respondents also argued that their rights under the First Amendment mandated an instruction based on religious liberty. In response, petitioner argued that the instruction should not be given because the use of the term "negligent" in *343 the statute is a tort concept, and so MCL 722.634 does not apply in the context of child neglect cases. The trial court agreed with petitioner, stating:
The statute in question is [MCL] 722.634. It says a parent or guardian legitimately practicing his religious beliefs who thereby does not provide specified medical treatment for a child, for that reason alone shall not be considered a negligent parent or guardian.
... [N]egligence law has nothing to do with the law in child protection matters. Therefore, that portion of the statute is not relevant to these proceedings.
The section goes on to say, the section shall not preclude a court from ordering the provision of medical services or non-medical remedial services recognized by state law to a child where the child's health requires it, nor does it abrogate the responsibility of a person required to report child abuse or neglect. So the second part of that paragraph confirms that negligence and neglect are two different bodies of law.
This interlocutory appeal followed.
II. ANALYSIS
On appeal, respondents argue that the trial court erred by holding that the statute does not apply to child protection proceedings. We agree.[5]
MCL 722.634 is a provision of the Child Protection Law (CPL), MCL 722.621 et seq ., the purpose of which "is to protect abused and neglected children."[6]
*344 *407 Becker-Witt v. Bd. of Examiners of Social Workers , 256 Mich. App. 359, 364, 663 N.W.2d 514 (2003). Analysis of the Legislature's intent with respect to MCL 722.634 requires statutory interpretation. "The goal of statutory interpretation is to give effect to the Legislature's intent as determined from the language of the statute." Bukowski v. Detroit , 478 Mich. 268, 273, 732 N.W.2d 75 (2007). The words in the statute are interpreted in "light of their ordinary meaning and their context within the statute and read ... harmoniously to give effect to the statute as a whole." Johnson v. Recca , 492 Mich. 169, 177, 821 N.W.2d 520 (2012) (quotation marks and citation omitted). In addition to a phrase's plain meaning, courts must consider "its placement and purpose in the statutory scheme." U.S. Fidelity & Guaranty Co. v. Mich. Catastrophic Claims Ass'n (On Rehearing) , 484 Mich. 1, 13, 795 N.W.2d 101 (2009) (quotation marks and citation omitted).
The trial court's view that this statute does not apply in child protective proceedings is erroneous because that view is inconsistent with the statutory language. Child protection proceedings often involve allegations that the parent is negligent in caring for a child. The CPL defines "child neglect" as
*345 harm or threatened harm to a child's health or welfare by a parent, legal guardian, or any other person responsible for the child's health or welfare that occurs through either of the following:
(i) Negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care.
(ii) Placing a child at an unreasonable risk to the child's health or welfare by failure of the parent, legal guardian, or other person responsible for the child's health or welfare to intervene to eliminate that risk when that person is able to do so and has, or should have, knowledge of the risk. [ MCL 722.622(k)(i) and (ii).]
As was stated in Mich. Ass'n of Intermediate Special Ed. Administrators v. Dep't of Social Servs. , 207 Mich. App. 491, 497, 526 N.W.2d 36 (1994), "[c]hild neglect is harm to a child's welfare that occurs through negligent treatment or failure to eliminate an unreasonable risk to the child's welfare." We conclude that the mandate of MCL 722.634 applies in child protection proceedings.
There is no standard instruction reflecting the content of MCL 722.634. Therefore, the sought instruction is "necessary to state the applicable law accurately'' and ... ''the matter is not adequately covered by other pertinent model civil jury instructions." MCR 2.512(D)(3)(a) and (b). Consistently with MCL 722.634, the trial court must instruct the jury that ''[a] parent or guardian legitimately practicing his religious beliefs who thereby does not provide specified medical treatment for a child, for that reason alone shall not be considered a negligent parent or guardian."[7]
*346 Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.
M.J. Kelly, J., concurred with Shapiro, P.J.
*408 I agree with the majority's conclusion that MCL 722.634 of the Child Protection Law (CPL), MCL 722.621 et seq. , applies in child protective proceedings. I write separately because I disagree that this entitles respondents to a jury instruction on MCL 722.634. I believe that the applicability of that instruction to this case remains in the trial court's discretion. See Hill v. Hoig , 258 Mich. App. 538, 540, 672 N.W.2d 531 (2003).
The parties are contesting whether MCL 722.634 is applicable to their upcoming adjudication trial. Whether jurisdiction is proper will be determined by MCL 712A.2(b), which provides, in pertinent part, as follows:
Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. ...
* * *
*347 (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.[1]
MCL 722.634 provides as follows:
A parent or guardian legitimately practicing his religious beliefs who thereby does not provide specified medical treatment for a child, for that reason alone shall not be considered a negligent parent or guardian. This section shall not preclude a court from ordering the provision of medical services or nonmedical remedial services recognized by state law to a child where the child's health requires it nor does it abrogate the responsibility of a person required to report child abuse or neglect.
The majority correctly concludes that MCL 722.634 provides a defense in child protective proceedings given its use of the term "negligent parent." I would clarify, however, that MCL 722.634 only applies when there is a question of "neglect." Although the CPL does not expressly define "negligent," MCL 722.622 does define "child neglect" to include ''[n]egligent treatment, including the failure to provide adequate ... medical care." MCL 722.622(k)(i ).[2] Further, the dictionary defines *348 "negligent" as "marked by or given to neglect," and the first synonym listed is "neglectful." Merriam-Webster's Collegiate *409 Dictionary (11th ed.). Therefore, the phrase "a negligent parent" in MCL 722.634 refers to a parent's act-or acts-of "neglect," which is often at issue in child protective proceedings. Accordingly, I agree with the majority that MCL 722.634 applies to child protective proceedings and, as relevant here, provides a defense to MCL 712A.2(b).
However, this does not necessarily entitle respondents to an instruction on MCL 722.634 in this case. MCL 712A.2(b)(1) differentiates between acts of "neglect" and acts of refusal. Specifically, MCL 712A.2(b)(1) states that a court may take jurisdiction if a parent "neglects or refuses to provide proper or necessary ... medical ... care...." (Emphasis added.) As stated, the use of the phrase "negligent parent" in MCL 722.634 shows that the Legislature only intended to provide a defense for acts of neglect. Therefore, it is significant that the Legislature differentiates "neglects" and "refuses"; a parent who "neglects" to provide medical care to his or her child is entitled to a defense under MCL 722.634, whereas a parent who "refuses" to provide medical care is not.
Accordingly, I agree with the majority's conclusion that MCL 722.634 applies in child protective proceedings. However, I would respectfully disagree that "the trial court must instruct the jury" on MCL 722.634. Rather, on remand, I would direct the trial court to decide the applicability of MCL 722.634 to this case on the basis of the evidence presented at trial.

In re Piland Minors , unpublished order of the Court of Appeals, entered December 20, 2017 (Docket No. 340754).

Hyperbilirubinemia is "[a]n abnormally high level of bilirubin in the circulating blood, resulting in clinically apparent icterus or jaundice when the concentration is sufficient." Stedman's Medical Dictionary (28th ed.), p. 918. Kernicterus is "[j]aundice associated with high levels of unconjugated bilirubin, or in small premature infants with more modest degrees of bilirubinemia ; ... characterized early clinically by ... high-pitched cry, lethargy, and poor sucking...." Stedman's Medical Dictionary (28th ed.), p. 1027.

"A Family Team Meeting is an opportunity for parents, extended family members, children (if age appropriate), caregivers and child welfare staff to meet and share ideas that will assist the family in creating and reviewing a plan related to the child(ren)'s safety, stability, well-being and permanence." Michigan Department of Health and Human Services, Family Team Meeting Informational Sheet , DHS-1104, available at https://www.michigan.gov/documents/dhs/DHS-1104_364119_7.dot (accessed April 26, 2018) [https://perma.cc/R4EN-P4LN].

The subject petition was filed on March 31, 2017. Petitioner had attempted to file a petition on March 8, 2017, but it was not authorized because more information was needed regarding the autopsy.

This Court reviews de novo questions of statutory interpretation and constitutional law. In re Deng , 314 Mich. App. 615, 621, 887 N.W.2d 445 (2016).

The title of the CPL describes the CPL as follows:
An act to require the reporting of child abuse and neglect by certain persons; to permit the reporting of child abuse and neglect by all persons; to provide for the protection of children who are abused or neglected ; to authorize limited detainment in protective custody; to authorize medical examinations; to prescribe the powers and duties of the state department of social services to prevent child abuse and neglect; to prescribe certain powers and duties of local law enforcement agencies; to safeguard and enhance the welfare of children and preserve family life; to provide for the appointment of legal counsel; to provide for the abrogation of privileged communications; to provide civil and criminal immunity for certain persons; to provide rules of evidence in certain cases; to provide for confidentiality of records; to provide for the expungement of certain records; to prescribe penalties; and to repeal certain acts and parts of acts. [1975 PA 238, title, as amended by 1988 PA 372, effective March 30, 1989 (emphasis added).]

Respondents also argue that they would be entitled to an instruction of this sort even in the absence of MCL 722.634 because the First Amendment guarantees their right to freedom of religion. We disagree. As held by the United States Supreme Court, "[T]he family itself is not beyond regulation in the public interest, as against a claim of religious liberty." Prince v. Massachusetts , 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944). "The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." Id . at 166-167, 64 S.Ct. 438.

MCL 712A.2(b)(1) will be amended, and effective June 12, 2018, " '[n]eglect' means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602." 2018 PA 58. MCL 722.602(d) defines "neglect" as "harm to a child's health or welfare by a person responsible for the child's health or welfare which occurs through negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care." MCL 722.602 will also be amended, effective June 12, 2018, but the change in its meaning is not significant to this case. See 2018 PA 60 (among other things, adding "though financially able to do so, or the failure to seek financial or other reasonable means to provide adequate food, clothing, shelter, or medical care" to the definition of "neglect").

Notably, this mirrors the definition of "neglect" that appears by reference in MCL 712A.2(b)(1)(B), effective June 12, 2018.