*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re S. PILAND, Minor.

UNPUBLISHED
November 21, 2023

No. 362338
Ingham Circuit Court
Family Division
LC No. 22-000002-NA

Before: GLEICHER, C.J., and SWARTZLE and YATES, JJ.

PER CURIAM.

For the fourth time, we must consider how the religious beliefs and practices of the parents in this case affect child protective proceedings concerning their children.[1] Respondent-mother has given birth to five children. In 2017, one of her daughters, AV, died as a result of jaundice, which could have been treated by readily available medical care. But as we noted, "respondents' religious beliefs precluded them from seeking modern medical care for themselves or for their children[,]" choosing instead to rely "on faith-based or divine healing." *In re Piland*, 336 Mich App 713, 717; 972 NW2d 269 (2021). Child protective proceedings addressing three of respondents' surviving children resulted in termination of respondents' parental rights, and we affirmed those termination orders. *In re Piland*, unpublished per curiam opinion of the Court of Appeals, issued September 15, 2022 (Docket No. 360062). Respondents' current appeal contests the trial court's termination of their parental rights to their fifth child, SP. Because the conditions that led to the termination of their parental rights to their three older children remain, the trial court had sound factual and legal grounds for terminating respondents' parental rights to SP, and termination was in the best interests of SP, we affirm.

---

[1] We previously addressed respondents' appellate challenges in three opinions: (1) *In re Piland*, 324 Mich App 337; 920 NW2d 403 (2018), vacated in part 503 Mich 1032 (2019); (2) *In re Piland*, 336 Mich App 713; 972 NW2d 269 (2021); and (3) *In re Piland*, unpublished per curiam opinion of the Court of Appeals, issued September 15, 2022 (Docket No. 360062).

# I. FACTUAL BACKGROUND

Respondents' parental rights to three of their children were called into question following the death of AP, their three-day-old daughter, who was born with jaundice in 2017. Respondents refused to seek medical attention for AP because they believe in divine healing and reject manmade medical intervention. After the birth of respondents' fourth child, VP, who required and received medical treatment for jaundice and the lack of RhoGAM, respondents' parental rights to their three surviving children—MP, JP, and VP—were terminated after VP made a full recovery because of medical treatment that respondents opposed. This Court affirmed the termination orders regarding those three children in an unpublished opinion issued on September 15, 2022. *Id*. at 1.

Respondent-mother was pregnant during the prior termination proceedings. After the birth of her fifth child, SP, in December 2021, Children's Protective Services requested termination of respondents' parental rights to SP, who required lifesaving medical treatment for jaundice and Rh incompatibility. The trial court conducted a three-day jury trial in May 2022, and the jury returned a verdict establishing jurisdiction at the adjudication phase of the proceedings. On June 22, 2022, the trial court held a bench trial and a dispositional hearing, which resulted in the order terminating respondents' parental rights to SP under MCL 712A.19b(3)(b)(*ii*) and (j) that is at issue on appeal. In arriving at that order, the trial court found that respondents had the opportunity to prevent injury to SP, but they failed to do so. The trial court concluded that respondents would not seek lifesaving treatment for their children under any circumstances. In analyzing the best interests of SP, the trial court observed that respondents were bonded with SP and generally had good parenting skills, but they categorically refused to provide medical care. Therefore, termination was appropriate despite the fact that SP was placed with relatives. Respondents have appealed the adjudication from May 2022 and the termination order entered in June 2022.

# II. LEGAL ANALYSIS

Respondents have presented three issues on appeal. First, challenging the adjudication that took place in May 2022, respondents insist that the jury erred in finding that they were "negligent parents" when they practiced their faith in abstaining from seeking medical care for SP. Second, respondents fault the authorities involved in this case for refusing to provide reunification services prior to termination of their parental rights. Third, respondents argue that the trial court erred when it found that termination of parental rights was in SP's best interests. We shall address these three issues in turn.

## A. ADJUDICATION DESPITE RESPONDENTS' RELIGIOUS BELIEFS

At the adjudicative phase of the proceedings, respondents opted for a jury trial. See *In re Sanders*, 495 Mich 394, 405; 852 NW2d 524 (2014) (explaining right to jury trial for adjudication). The jury trial took place in May 2022, and the jury found two statutory grounds for the exercise of jurisdiction: (1) both parents, "when able to do so, neglected or refused to provide proper medical, surgical, or other care necessary for [SP]'s health or morals"; and (2) "[SP]'s home or environment, by reason of cruelty on the part of [both parents] is an unfit place for [SP] to live in." Consequently, the trial court exercised jurisdiction over SP by virtue of MCL 712A.2(b)(1) and (2).

When the trial court instructed the jury, it explained the principle set forth in MCL 722.634, which states: "A parent or guardian legitimately practicing his religious beliefs who thereby does not provide specified medical treatment for a child, for that reason alone shall not be considered a negligent parent or guardian." Even though the jury was properly instructed on that point of law and the jury thereafter returned verdicts permitting the trial court to exercise jurisdiction over SP, respondents seem to challenge the sufficiency of the evidence by contending that the evidence in the record could not possibly have supported the jury's verdicts. Although a trial court's decision to exercise jurisdiction is reviewed for clear error, *In re Christie*, 339 Mich App 1, 4; 981 NW2d 172 (2021), a jury verdict is at issue here. Applying criminal law by analogy, we shall employ the de novo standard of review to the sufficiency of the evidence. *People v Anderson*, 331 Mich App 552, 557; 953 NW2d 451 (2020). In order to acquire jurisdiction, "the factfinder must determine by a preponderance of the evidence that the child comes within the statutory requirements of MCL 712A.2[.]" *In re Brock*, 442 Mich 101, 108-109; 499 NW2d 752 (1993).

Respondents' challenge to the jury's verdicts relies on MCL 722.634 because they contend that the evidence showed they were legitimately practicing their religious beliefs. But respondents fail to address the fact that the jurors found jurisdiction based on two independent grounds, one of which—cruelty—is not subject to the defense prescribed by MCL 722.634. Moreover, there was a sufficient basis for the jurors to reject the defense defined by MCL 722.634. At trial, evidence was presented that respondent-father sought medical care for himself after getting lacerations on his arms and that respondent-mother wears prescription glasses. Despite their own behavior, both respondents made clear that they would not seek medical care for their children. In their verdicts, the jurors found that both respondents, "when able to do so, neglected or refused to provide proper medical, surgical, or other care necessary for [SP's] health or morals[,]" and that "[SP's] home or environment, by reason of cruelty on the part of [both respondents], is an unfit place for [SP] to live in." In rendering those verdicts, the jurors had a sound basis to reject the defense of legitimate practices of religious beliefs, as contemplated by MCL 722.634.

## B. REASONABLE EFFORTS TO REUNIFY THE CHILD AND FAMILY

Respondents assert that termination of their parental rights was improper because services were not offered to them before termination occurred. We review a trial court's ruling concerning reasonable efforts for clear error. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). We must "defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009). Because this issue was not raised in the trial court, it is unpreserved and we will review the issue under the plain-error doctrine. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Accordingly, reversal is not warranted unless respondents establish that (1) error occurred; (2) the error was "plain," i.e., clear or obvious; and (3) the plain error affected their substantial rights. *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019).

According to MCL 712A.19a(2)(c), reasonable efforts at reunification need not be made if "[t]he parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights." Both respondents had their

parental rights to SP's siblings involuntarily terminated, and they failed to rectify the condition—a refusal to seek medical care—that led to those terminations.  Therefore, their argument about the lack of services prior to termination is without merit.

## C.  BEST INTERESTS OF THE CHILD

Finally, both respondents insist that termination of their parental rights was not in SP's best interests because they could provide him with love, food, clothing, and permanency, and there was a strong bond between respondents and SP.  This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests.  *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014).  After petitioner established a statutory ground for termination by clear and convincing evidence, the trial court had to determine, by a preponderance of the evidence, whether termination of respondents' parental rights was in SP's best interests.  *Id*.  In doing so, the trial court had to weigh a variety of factors, including " 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.' "  *Id*.  The trial court could also consider the parents' history of domestic violence, their compliance with a case-service plan, the parents' visitation history with the child, the child's well-being while in care, and the possibility of adoption.  *Id*. at 714.

Here, the trial court found that respondents had a strong emotional bond with SP.  The trial court also considered SP's placement with relatives who were seeking adoption.  Additionally, the trial court noted that respondents were able to provide for SP, but that they both lacked judgment concerning medical care and treatment.  The trial court stated that their lack of judgment weighed "heavily" in favor of termination.  Finally, the trial court found that respondents would not modify their parenting style or benefit from any service plan that would include medical care and treatment for SP.  In fact, respondents declared numerous times that they would not consent to medical care and treatment for their children.  Accordingly, the trial court did not clearly err by concluding that this circumstance was of primary concern with respect to SP's best interests and that termination was in the best interests of SP.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Brock A. Swartzle
/s/ Christopher P. Yates